No. 86-15

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

THOMAS J. HELEHAN,

        Plaintiff and Appellant,

   -vs-

O. M. UELAND,

        Defendant and Respondent.

_____

APPEAL FROM:  District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable Mark Sullivan, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        John Leslie Hamner, Butte, Montana

    For Respondent:

        Maurice A. Maffei, Butte, Montana

_____

Submitted on Briefs: July 10, 1986

Decided:  September 16, 1986

Filed:  SEP 16 1986

_____
                Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from an order of the District Court of the Second Judicial District in and for the County of Silver Bow, Montana. Plaintiff brought the action seeking determination that his survey correctly established the true boundary and asking for trespass damages. Defendant counterclaimed requesting similar relief. Following a bench trial, the District Court accepted defendant's survey and off-set damages. We affirm in part and remand in part.

This case concerns a dispute between two adjacent landowners over the exact location of their boundary. Plaintiff, Thomas J. Helehan, owns two patented mining claims in Silver Bow County, several miles west of Butte. He also has interests in four unpatented mining claims located on public domain just north of his patented claims. Defendant, O. M. Ueland, owns the property immediately to the west of Helehan's patented claims.

The dispute between the two men apparently began in the early 1960's. Horses which Helehan permitted to graze on his land began to wander off his land onto Ueland's. At the time, the only semblance of a division line was an old dilapidated wooden fence which ran roughly north and south between the parties' properties. This fence had evidently been built long before either party had acquired his property and neither felt obligated to repair or maintain it. Consequently, it had long since ceased to function as a barrier.

Ueland complained to Helehan of the horses, but Helehan replied that their properties were open range and that he

2

therefore had no responsibility to fence in the animals. So in 1969, Ueland decided to fence out the horses and built a new fence over the site of the old wooden one. Also, in an effort to more fully fence out the horses, Ueland added to his fence an additional segment on the public domain north of Helehan's patented claims. This segment, running generally east and west, was apparently placed between Helehan's patented and unpatented claims.

Helehan objected to Ueland's fence, claiming first that it was located east of the true boundary and therefore encroached upon his land and second, that it barred access to his unpatented claims. In 1970 he hired a licensed surveyor, Jack Hendrickson, to determine the exact line of the boundary. Hendrickson's survey supported Helehan's allegations that the fence intruded upon Helehan's property; it indicated that the true border was located west of the fence.

Helehan filed this action in 1975, seeking a determination of the boundary as established by Hendrickson's survey, removal of Ueland's fence and trespass damages. Ueland counterclaimed, seeking grazing damages caused by the horses stationed on Helehan's land and one-half the cost of the fence.

In 1976, before the case was heard, Ueland hired his own licensed surveyor, Walter Everly. Everly's survey, in direct contrast to Hendrickson's, indicated that the fence was entirely within Ueland's property and that the boundary line was in fact well to the east of the location of the fence. Ueland accordingly dismantled his fence and rebuilt it along the line shown by Everly's survey.

Helehan responded by hiring Matt Vranish to resurvey the boundary lines in 1983 or 1984 and by hiring David Albert to retrace Jack Hendrickson's 1970 survey. Both these licensed surveyors generally confirmed Hendrickson's findings.

The parties finally brought the case to trial in 1985. As to the proper location of the boundary between Ueland's land and Helehan's patented claims, the court held for Ueland, establishing the border line in conformance with Everly's survey. As to the stretch of fence separating Helehan's patented and unpatented mining claims, the District Court held that since the fence was located on public domain, Helehan first had to exhaust his administrative remedies with the proper agency. As to damages, the court held that Helehan was liable for grazing damages but that Ueland was not entitled to any reimbursement for the cost of his fence. The court concluded, however, that the grazing damages and the fence construction were off-setting.

We face three issues on appeal:

(1) Whether the District Court erred in establishing the boundary in accordance with Everly's survey.

(2) Whether the District Court erred in ruling that plaintiff had failed to exhaust his administrative remedies as to the alleged trespass of his unpatented claims.

(3) Whether the District Court's damage awards were correct.

Issue 1: The tracts of property in question were originally surveyed in 1877 by official United States surveyors. Pursuant to the practices of the time, the government surveyors often marked section corners and quarter corners by embedding a large stone in the ground and

4

surrounding it with smaller stones. The large stone was then usually engraved with an appropriate identification. These original monuments remain important for they still determine exact locations of section corners and lines. Indeed, the true corner of a government section is where the original surveyor in fact established it, whether such location is right or wrong as shown by subsequent surveys. Vaught v. McClymond (1945), 116 Mont. 542, 550, 155 P.2d 612, 616. So when surveyors use corner sections and lines to base measurement and plot tracts, it is essential that they properly identify and authenticate the original monument.

In the course of their survey, appellant's surveyors Hendrickson and Vranish[1] located what they perceived to be a stone monument. This unmarked "monument" was located in roughly the same area as the southeast corner of Section 24. Hendrickson and Vranish ultimately accepted this stone as the survey marker for the southeast corner and included this location in their measurement.

Surveyor Everly also spotted this stone but rejected it as the southeast corner marker. Everly had had occasion to survey the same section line in 1949 and, according to his map and notes of that time, had failed to find any monument marking the southeast corner despite a considerable search. Everly further testified that the stone marker relied upon by Hendrickson and Vranish was not present in 1949. He stated that given his lengthy search for this corner in 1949 and the marker's highly visible location in the same general area as

---

[1]    Appellant's third surveyor, David Albert, undertook merely a retracement of Hendrickson's survey. We find Albert's results to be of little probative value.

5

the southeast corner, he could not but have noticed the marker had it been present. Instead, Everly placed the southeast corner in the same location he had placed it in 1949--nearly two hundred feet to the east of the stone marker. This discrepancy is the principal basis for the conflicting surveys.

Defendant also introduced into evidence a 1929 highway map which indicated that the southeast corner had likewise not been found at that date.

Upon review of this evidence, we hold that the District Court did not err in establishing this boundary in accordance with Everly's survey. The scope of this Court's review when considering the findings and conclusions of a district court sitting without a jury is by now well settled. We are confined to determining whether there is substantial credible evidence to support the District Court's findings and conclusions. General Mills, Inc. v. Zerbe Bros., Inc. (Mont. 1983), 672 P.2d 1109, 1111, 40 St.Rep. 1830, 1832. In so determining, we must view the evidence in the light most favorable to the prevailing party. Cameron v. Cameron (1978), 179 Mont. 219, 228, 587 P.2d 939, 944. Further, the evidence may conflict with other evidence and still be deemed "substantial." Cameron, at 945.

We find that the District Court had substantial credible evidence to support its ruling. Walter Everly was not only an experienced surveyor but also an experienced surveyor of the property in question. His detailed testimony, in connection with the highway map, lend sufficient support to the court's decision. A trial judge's finding based on substantial though conflicting evidence will not be disturbed unless there is a clear preponderance of

6

evidence against such a finding. <u>Cameron</u>, supra at 944. This has not been shown.

Issue 2: Appellant argues that the District Court erred in ruling that if Ueland's fence interfered with Helehan's enjoyment of his unpatented mining claims, he must first exhaust his administrative remedies through the proper agency. Though Helehan stated that this was an issue on appeal, his counsel has failed to present a persuasive argument in the two paragraphs addressing the issue. We find no merit in this issue.

Issue 3: The District Court ruled that Helehan was liable for overgrazing damages caused to Ueland's property by the horses allowed on Helehan's land. The court estimated this damage at $3,000. The court further ruled that Ueland was not entitled to any reimbursement from Helehan for the cost of the fence, the total cost of which was also estimated at $3,000. The court then off-set these amounts.

We note initially that these costs do not off-set. There are damages flowing from Helehan to Ueland but none flowing from Ueland to Helehan. The correct award, consistent with the court's findings, would have been a damage award in favor of Ueland.

We find, however, that this error is harmless, as we find no evidence in the record supporting the lower court's award to defendant for grazing damages. Montana has long recognized an open range law whereby landowners must fence out intruding livestock. See Jenkins v. Valley Garden Ranch, Inc. (1968), 151 Mont. 463, 443 P.2d 753; Bartsch v. Irvine Co. (1967), 149 Mont. 405, 427 P.2d 302; Thompson v. Mattuschek (1959), 134 Mont. 500, 333 P.2d 1022.

The record is barren of any evidence indicating grazing damages done to defendant's property after 1969, the date Ueland built his fence. Before 1969, Helehan could not be legally obligated to restrain the horses and cannot be held liable for damages occurring during this time. Because we so hold, we decline to discuss Helehan's liability for trespassing horses which he neither owns nor agisters. We therefore remand this case and instruct the District Court to enter judgment consistent with this opinion.

In conclusion, we affirm the District Court's determination of the true boundary line and remand the damage awards.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

8