No. 87-34

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

ARTHUR D. BOLLINGER and DALLAS
BOLLINGER, husband and wife,

        Plaintiffs and Respondents,

   -vs-

RAYMOND HOLLINGSWORTH and GINGER
LYNN HOLLINGSWORTH, husband and wife;
et al.,

        Defendants and Appellants.

---

APPEAL FROM:  District Court of the Nineteenth Judicial District,
              In and for the County of Lincoln,
              The Honorable Robert Holter, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Sverdrup & Spencer; Scott B Spencer, Libby, Montana

    For Respondent:

        Warden, Christiansen, Johnson & Berg; Gary R.
        Christiansen, Kalispell, Montana

---

Submitted on Briefs:  May 22, 1987

Decided: July 21, 1987

Filed: JUL 21 1987

_Ethel M. Harrison_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

The Hollingsworths appeal a judgment entered by the District Court, Nineteenth Judicial District, Lincoln County, quieting title to a strip of land and establishing the boundary line between their property and that of the Bollingers. We affirm the judgment of the District Court.

This action involves a dispute over the location of a boundary line in Section 10, Township 26 North, Range 29 West, Lincoln County. The boundary lies on the north-south quarter section line. When the section was originally surveyed by the Government Land Office (GLO) in 1903, a quarter-corner monument was placed at the mid-section point on the north boundary line of Section 10. Unfortunately, this monument was buried by the reconstruction of Highway 2 during the 1930's. Since this monument is lost, proper location of the quarter section boundary must be determined by reference to the other corners.

The parties' specific point of disagreement is the proper location of the northeast corner of Section 10. The Bollingers' position, upheld by the District Court, is that the northeast corner is marked by the original sandstone monument, which was found by the surveyor commissioned by the Bollingers to resurvey the property. The Hollingsworths' position is that a brass cap, set by the Bureau of Land Management (BLM) in a 1964 resurvey of the area, is the proper location of the northeast corner. On appeal, the Hollingsworths argue the District Court's acceptance of the Bollinger survey was clearly erroneous and unsupported by the evidence. They also appeal the court's award of compensatory and punitive damages against them.

Section 10 was originally surveyed by the GLO in 1903. Around 1912, Mr. Fosseum, the original homesteader of the Hollingsworths' property, built a rail fence on the north-south quarter section line which divided the upper portion of Section 10. This fence separated the Fosseum property from the Manicke property. The Manickes were predecessors-in-interest to the Bollingers, and were the parents of Mrs. Bollinger. The rail fence remained in this location until 1982, when the Bollingers replaced it with a new barbed wire fence.

The Hollingsworths purchased the Fosseum property in 1982 from the Shelleys, Mr. Fosseum's successors-in-interest. In 1984, Mr. Hollingsworth told Mr. Bollinger he was going to build a fence and a road 50 feet west of the old rail fence line (and 50 feet in toward the Bollingers' property). The Bollingers contacted an attorney who wrote the Hollingsworths a letter asking them to contact him and discuss the matter. The Hollingsworths did not respond to this letter.

In the spring of 1985, the Hollingsworths removed the Bollingers' fence and installed a new fence approximately 50 feet to the west. The Bollingers' attorney sent a second letter to the Hollingsworths demanding an explanation of their actions and requesting they or their attorney contact him. The Hollingsworths again did not respond. The Bollingers then hired a surveyor to survey their property. By using the original GLO survey notes and locating the original northeast corner monument, the surveyor set the lost north quarter corner (now buried under Highway 2) by single proportion measurement and established the quarter section boundary eight feet to the west of the old rail fence line. The Bollingers built a second fence on this re-established boundary line. In the fall of 1985, the Bollingers

discovered their new fence had again been cut. They filed their complaint in this action January 2, 1986.

The first issue raised by the Hollingsworths is whether the District Court's judgment which located the quarter section boundary was clear error of law and unsupported by the evidence. The standard of review in considering a judgment rendered in a civil action before the District Court without a jury is whether the findings of fact are clearly erroneous. Rule 52(a) M.R.Civ.P.; Roberts v. Mission Valley Concrete Industries, Inc. (Mont. 1986), 721 P.2d 355, 357, 43 St.Rep. 1254, 1257.

This Court has had the opportunity to examine the law of boundaries on several occasions. As we first stated in Vaught v. McClymond (1945), 116 Mont. 542, 549-50, 155 P.2d 612, 616, "[t]he location of corners and lines established by the government survey, when identified, is conclusive . . .." Whether that original location is right or wrong as shown by later surveys is immaterial; the true corner of a section or quarter section is where the GLO surveyors in fact established it. Stephens v. Hurly (1977), 172 Mont. 269, 278, 563 P.2d 546, 551. "The best evidence is the corners actually fixed upon the ground by the government surveyor, in default of which the filed notes and plats come next . . .." Vaught v. McClymond, 116 Mont. at 557, 155 P.2d at 620 (emphasis in original).

The original 1903 GLO survey notes for Section 10 state that a 16"x10"x6" sandstone, carved with two notches on one side and five notches on the other side, was used as a monument for the northeast corner of Section 10. This stone was not located when the BLM resurveyed the section in 1964 and relocated the section corners. However, a piece of sandstone meeting this exact description was located by Mr. Bollinger's surveyor, and its existence was corroborated by

- 4 -

the testimony and exhibits of Mr. Hollingworth's surveyor. The District Court also conducted an on-the-ground inspection of the boundary location and observed the sandstone monument. As we stated in Buckley v. Laird (1972), 158 Mont. 483, 491, 493 P.2d 1070, 1074:

> The object of a resurvey is to furnish proof of the location of the lost lines or monuments, not to dispute the correctness of or to control the original survey. The original survey in all cases must, whenever possible, be retraced, since it cannot be disregarded or needlessly altered after property rights have been acquired in reliance upon it. On a resurvey to establish lost boundaries, if the original corners can be found, the places where they were originally established are conclusive without regard to whether they were in fact correctly located . . ..

The testimony of the Bollingers' surveyor, his field notes and the 1903 GLO field notes introduced at trial all indicate that the resurvey "followed in the footsteps" of the original survey and was based upon location of the original corner monuments for Section 10. The Hollingsworths have argued that courses and distances based upon the BLM resurvey are more consistent with the original GLO notes than those of the Bollingers' surveyor. However, the general rule is that courses and distances must yield to natural or artificial monuments. Buckley v. Laird, 158 Mont. at 492, 493 P.2d at 1075. We therefore hold that the District Court correctly determined the boundary line between the parties' properties based upon the Bollinger resurvey which located the original corner monuments.

The second issue raised by the Hollingsworths is whether the District Court erred in awarding compensatory and punitive damages against them. The District Court found the Bollingers had sustained the following losses:

- 5 -

1. Lost pasturage for July, August and September, 1985 at a value of $192.00;

2. Replacement of the fence destroyed by Hollingsworths at a value of $1,057.00;

3. Cost of the survey to establish the property boundary at $3,020.20

The court awarded the Bollingers $4,371.10 for actual damages and $4,000.00 for punitive damages based upon Mr. Hollingsworth's malicious and oppressive actions in destroying two of the Bollingers' fences. The difference in the amount awarded for actual damages and the losses set forth in the court's findings is $101.90. This discrepancy is accounted for by the following calculations:

1. The Bollingers testified that they incurred a $100.00 expense in purchasing hay. The District Court included this expense without listing it as a loss in the findings of fact.

2. The Bollingers' cost to rebuild the fence was $1,057.90. The court awarded $1,057.00

3. The Bollingers' cost of the survey was $3,021.20. The court awarded $3,020.20.

The $101.90 error is clerical in nature and we amend the District Court's findings nunc pro tunc in order to conform to the judgment for actual damages of $4,371.10

Punitive damages may be recovered for tortious acts of malice and oppression. Section 27-1-222, MCA. The testimony at trial indicated the Hollingsworths ignored the Bollingers' request to negotiate the boundary dispute, and that Mr. Hollingsworth destroyed two of the Bollingers' fences. This evidence was substantial and credible so as to support the District Court's award of punitive damages.

The judgment of the District Court is affirmed.

- 6 -

_____
John C. Sheehy
Justice

We Concur:

_____
J. A. Turnage
Chief Justice

_____

_____
William E. Hunt

_____
R. C. McDonough
Justices

- 7 -