No. 87-464

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

_____

PAT M. GOODOVER,

        Plaintiff and Respondent.

  -vs-

LINDEY'S, INC., and the ESTATE OF
WILLIAM C. FOREST, Deceased, et al.,

        Defendants and Appellant.

_____

APPEAL FROM:  District Court of the Fourth Judicial District,
               In and for the County of Missoula,
               The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Paul Neal Cooley; Skelton & Cooley, Missoula, Montana
        Harrison, Loendorf & Poston, (William Forest Estate),
        Helena, Montana

    For Respondent:

        John W. Larson, Missoula, Montana

_____

Submitted on Briefs:  April 7, 1988

Decided:  June 13, 1988

Filed: JUN 13 1988

_____
                Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

This is an appeal from a judgment of the Fourth Judicial District Court, Missoula County, determining a specific property line monument in favor of plaintiff/ respondent Pat Goodover (Goodover). Defendant/appellant Lindey's Inc., (Lindey's), appeals the judgment and we affirm.

Appellant in this case presented eleven issues, which are more appropriately restated as follows:

1. Whether the District Court erred in allowing hearsay evidence in determining the location of the boundary monument?

2. Were the District Court's findings of fact, conclusions of law and judgment based on substantial credible evidence?

3. Whether the District Court abused its discretion in denying Lindey's motion for a new trial or in the alternative amendment of the judgment?

4. Whether the District Court abused its discretion in denying Patricia Jewell's motion to intervene?

In dispute is the location of the northeast corner of lot two, of the Seeley Lake Shores Sites which was filed as a platted unofficial subdivision with the Missoula County Clerk and Recorder in 1944. From this plat, and testimony presented at trial, it is clear that the original intent of the developers was to provide lots with 100 feet of lake frontage, except for lot one, purchased by Lindey's, which was to contain 125 feet. However, the plat is filled with errors.

Goodover, who owns lot two, filed this action for declaratory judgment and quiet title after Lindey's, by its

surveyor, R. David Schurian, established a new lot corner on the northeast side of Goodover's boathouse. The complaint was filed August 21, 1984 and subsequently amended twice.

A bench trial was held April 7, 1987, and findings of fact, conclusions of law and a judgment in favor of Goodover were filed on June 15, 1987 reserving the issue of damages for a later hearing. Motions for a new trial or amendment of the judgment, along with a motion for a stay made in anticipation of filing a motion to intervene filed by Patricia Jewell (Jewell), were denied by the District Court on October 2, 1987. Jewell owns lot five which is adjacent to lot three but was not named as a party in this action. This appeal followed.

The only dispute at trial was the location of the monument for the northeast corner of lot two and the accompanying lake frontage. The lots are set around the southeast corner of the lake as follows: lot three is immediately south of lot five, lot one is south and westerly of lot three, and lot two is west of lot one. Goodover purchased lot two with Mills Folsom from Don Paddock in 1965. Paddock had purchased the property from George Meltzer who had bought the land from Jim Sullivan.

Meltzer was called at trial by Lindey's and testified that the northwest corner of lot two and lot four to the west was marked with a wooden monument. This monumentation was generally accepted by all parties, including Greg Martinsen, Goodover's surveyor, and Schurian. Meltzer stated that the northeast corner was marked both with a wooden monument and a mushroom-headed spike known as a boat spike. Meltzer was a Missoula County land and building appraiser during the time he owned lot two and testified that he measured the lake frontage of lot two as approximately 93 feet.

3

In deposition, Folsom testified that the east line of the property was marked by blazes on trees and that the northeast and northwest corners were marked by wooden stakes. Goodover purchased Folsom's share of the property in 1966. Both Folsom and Goodover stated a metal barrel and wooden stake marked the northeast corner of the lot in 1965. This barrel and stake were removed, and a new fence as well as an outhouse were erected by Lindey's along the property line, after Schurian re-surveyed the property. Schurian placed a new northeast corner monument near the middle of the east side of Goodover's boat house. This activity resulted in a temporary order being issued by the District Court disallowing the destruction of any of the other property markers.

Lindey's is purchasing lots one and three from William C. Forest, now deceased. Lindey's requested of Forest a Certificate of Survey of the property and hired Professional Consultants, Inc., a firm of registered surveyors including Schurian, to prepare the Certificate. Schurian and his crew found all the corners on lot five, and retraced the work done by Ainsworth and Associates, Inc., which surveyed lot five in 1970. At that time, Martinsen, who was later hired by Goodover, worked for Ainsworth and Associates, Inc., and did work on lot five. Ainsworth and Associates, Inc. later became Professional Consultants. Schurian found uniform one-inch pipes as markers for boundaries common to lots seven and five, five and three, one and three and two and four. The only monument that was not found by Schurian was that between lots one and two.

Schurian prepared the Certificate of Survey using the "compass rule" to locate the corner between lots one and two. He then placed 5/8-inch rebar with a 1½-inch aluminum cap to mark where he believed the northeast corner to be. This

4

survey shows the southeast corner of Goodover's boathouse encroaching on lot one.

The survey completed by Schurian leaves Goodover with what appears to be 89.64 feet of lake frontage, lot one with 125 feet of lake frontage and lot three with 100 feet of lake frontage. However, at trial, Schurian presented an exhibit and testified that his measurement really provided Goodover with 95.35 feet if the aluminum cap boundary was extended to the waterfront. This testimony was impeached to some extent by Martinsen when he was recalled as a rebuttal witness. Martinsen testified that the problem with Schurian's explanation was that it required the line to go straight into the lake, whereas the official manner of measuring lake frontage calls for a central point in the water to be extended back to the land at an angle.

Martinsen was hired by Goodover twice. The first time, Martinsen located a 1½-inch pipe with a ¼-inch rod sticking through it which he believed to be the original northeast corner marker. The District Court found, in its judgment of June 12, 1987, that this pipe monument was within a foot of the barrel and stake monument that Goodover relied upon and that the monument was in line with at least one of the blazed trees.

Goodover would not accept this marker originally because he found out Martinsen had worked for Ainsworth and Associates, Inc. Martinsen, however, was rehired by Goodover and on March 13, 1987 again located the 1½-inch pipe with the rod sticking in it by use of a metal detector.

Martinsen also searched for and found pipe that marked the other lots on Seeley Lake. Martinsen testified that 11 of these lots were within two to three percent of the 100-foot frontage intended. By using the pipe that Martinsen located on lot two, Martinsen stated the percentage of

5

variation was less than one percent as the distance of frontage was 99.33 feet. Percentage of variation for lots one and three were 1.12%.

At trial, Goodover testified Sullivan told him a glove and stake, located approximately four to five feet east of the boathouse, was the property marker between lots one and two. Goodover testified that Paddock had indicated a barrel and stake marked the boundary. Paddock, when he transferred the property to Folsom and Goodover, provided a plat that he said was prepared by a surveyor who had blazed the trees along the east boundary of lot two. Pictures of a number of blazed trees were presented as evidence.

Both surveyors testified that the purpose of a retracement survey is to follow in the steps of the original surveyor. The District Court made a finding of fact that the amount of lake frontage allocated by Martinsen more closely followed the original survey than that allocated by Schurian. Therefore, taking into consideration the testimony that all monumentation was second generation monumentation; that both experts acknowledged that distances on the original survey were more reliable than courses or bearings, and that monuments were superior to distances; and the degrees of variation presented, the court found the "best available evidence of the corner between Lot 1 and Lot 2 . . . was the existence of the pipe monument, barrel and stake" and "there is sufficient credible testimony to locate the corner between Lot 1 and Lot 2 . . . approximately five feet to the east of the existing boathouse."

In its conclusions of law the court referred to the Bureau of Land Management Manual of Survey Instructions (1973), the underlying regulations of which were discussed and approved by the Montana Supreme Court ruling of Vaught v. McClymond (1945), 116 Mont. 542, 155 P.2d 612. The District

6

Court concluded that sufficient credible evidence existed that the original survey distance for lake frontage for lots eight through twenty-one was 100 feet with lot one containing 125 and that the most common type of secondary monumentation along the lake frontage was buried pipe. The court concluded the pipe, found at the northeast corner of lot two by Martinsen, was the best reliable evidence concerning the original intent of the surveyor. Finally, the court made a conclusion of law that sufficient credible testimony was presented to locate the corner between lot one and two at the monumentation found by Martinsen and that COS 2351, the certificate of survey completed by Schurian, should be amended to conform to the findings and conclusions.

Initially, as to issue one, we note that counsel for Lindey's appropriately objected to Goodover's recitation of his conversation with Sullivan regarding the boundary according to the barrel and stake as hearsay. The court originally sustained the objection but upon being directed to the exceptions to hearsay rule, overruled the objection.

Rule 803(20), M.R.Evid., states:

> Reputation in a community, arising before the controversy, as to boundaries of or customs affecting lands in the community, and reputation as to events of general history important to the community or state or nation in which located.

Lindey's contends there was no evidence "attempting to prove the reputation in the community concerning the boundary between Lots 1 and 2 of Seely Lake Shores Sites." The specific statement involved Sullivan stating the northeast corner was marked with a glove located on a post. Goodover said the statement was made after he requested Sullivan to show him where his property line was so he could build his boathouse five feet from the line.

7

The disputed testimony is as follows:

Q. When did you find those blazes on the trees?

A. Before I built the boathouse, where I built it, I got ahold of Mr. Sullivan and asked him to come over and show me the location of the property line so I could build the boathouse leaving about five feet between the property line and where the foundation was poured.

Mr. Sullivan showed me the property line where the flag--where the glove was located on the post and where the metal can was tied around it, and he said that was my northeast corner.

[Defense Counsel]: I'll move to strike on the grounds it's hearsay.

The Court: Sustained.

[Plaintiff's Counsel]: Your Honor, if I may, I agree it's hearsay, but I think the evidence as to common boundary is within the exception of 801(d)20. [Sic].

The Court: I think that's probably correct. I'll reverse my ruling.

[Plaintiff's Counsel then did not further question Goodover about the stake and glove].

The exception erroneously quoted by plaintiff's counsel allows hearsay because it provides a rebuttable presumption "that a person is the owner of property from common reputation of ownership." MCA Commission Comments, Rule 803(20). Cases cited therein are: Brennan v. Mayo (1937), 105 Mont. 276, 72 P.2d 463; Nemitz v. Reckards (1934), 98 Mont. 229, 38 P.2d 980; and Kurth v. LeJeune (1928), 83 Mont. 100, 269 P. 408. None of these cases are helpful with the issue we are faced with here. Generally, the testimony must

report a general consensus of opinion and not just an assertion of an individual's personal observation. The Nature Conservancy v. Nakila (Hawaii App. 1983), 671 P.2d 1025, 1033; 5 Wigmore, Evidence § 1584 (Chadbourn rev. 1974). Goodover presented the statements of Sullivan as an assertion of Sullivan's individual personal observation.

> [T]he reason for this rule is not only caused by the perishable nature of boundary markers, but also because general reputation about facts of community interest are generally trustworthy. It is unlikely that a falsehood could become generally accepted in a community as the truth. The prolonged and constant exposure of these facts to observation and discussion by the community sifts out the possible errors and gives to the residual facts which are generally accepted by the locality a trustworthiness which allows these facts to be presented as evidence in a court of law.

4 Weinstein's Evidence, ¶ 803(20)[01], 803-344 (1987).

In the case at bar, the rationale for excepting Goodover's testimony from the hearsay rule is not present. Goodover asserted Sullivan showed him where the property border marker existed. This assertion was presented as fact of personal observation. The reasoning behind the exception requires that the reputation of where Goodover's property line existed is reliable because "there is a high probability that the matter underwent general scrutiny as the community reputation was formed." Weinstein, supra, at 803-345. No evidence was presented regarding the reputation of the monument position. Lindey's objection was appropriate and should have been sustained.

Other evidence was presented which supported Goodover's statement, e.g., statements by Martinsen that the marker he

9

found was beyond the monument Goodover referred to; and testimony by Folsom that Paddock had told both Folsom and Goodover that a surveyor had blazed the trees between lots one and two. This evidence was sufficient to be accepted by the court without Goodover's recitation.

Therefore, we hold that it was harmless error to allow the testimony at issue. Although the District Court referred to the statement in its findings of fact, it did not rely solely on the statement in its conclusions of law nor is it a basis for the judgment. We have held that admission of hearsay testimony can be harmless error and not rise to the level of reversible error numerous times. Hill v. Turley (Mont. 1985), 710 P.2d 50, 55, 42 St.Rep. 1783; Lindberg v. Leatham Bros., Inc. (Mont. 1985), 693 P.2d 1234, 1243, 42 St.Rep. 137.

Regarding the issue of substantial credible evidence Lindey's contends: (1) that the District Court erred in finding Martinsen's exhibits depicted a "retracement;" (2) that it was error to find a 1-inch axle was a monument; (3) that it was error to find Martinsen's survey was based on the best and most reliable evidence; (4) that the court erred in finding the buried pipe monument at lot two was the most common type of secondary evidence; and (5) that the court erred in finding the correct and true boundary was retraced by exhibits 31 and 34, (maps of the area).

In considering a judgment rendered in a civil action before the district court without a jury, reversal will not occur unless it is shown findings of fact are clearly erroneous. Rule 52(a), M.R.Civ.P.; Bollinger v. Hollingsworth (Mont. 1987), 739 P.2d 962, 963, 44 St.Rep. 1228.

10

With this standard in mind, we hold that the District Court did not err in adopting its findings of fact, and conclusions of law.

Lindey's relies on A Treatise on the Law of Surveying and Boundaries, Clark (3rd Ed.), Chp. 13, p. 280 in regard to the "retracement" argument:

> Section 258. The theory of the following surveyor -- The cardinal principle guiding a surveyor who is running the lines of a previous survey is to follow in the footsteps of the previous surveyor.

Both surveyors agreed with this statement but Lindey's claims Martinsen did not follow the rule and contends exhibits 31 and 34 were based on "nothing more than a traverse around the lake shore" and further, that the court erred in finding Martinsen's survey was based on the best and most reliable evidence.

We find that a number of general rules have been established in this area to determine the proper location of lost or obliterated boundaries or corner monuments. These rules are best set forth in Vaught, supra:

> "A survey of public lands does not ascertain boundaries; it creates them." [Citation omitted.] "The quarter lines are not run upon the ground, but they exist, by law, the same as the section lines." [Citation omitted.] The location of corners and lines established by the government survey, when identified, is conclusive [citation omitted] and the true corner of a government subdivision of a section is where the United States surveyors in fact established it, whether such location is right or wrong, as may be shown by a subsequent survey. [Citation omitted.] Original monuments of survey established during a government survey, when properly identified, control courses and

11

distances, [citation omitted] and field notes and an official plat of government surveys of record will control in ascertaining locations, even though the monuments established are gone. [Citation omitted.] In ascertaining the lines of land or in re-establishing the lines of a survey, the footsteps of the original surveyor, so far as discoverable on the ground, should be followed and it is immaterial if the lines actually run by the original surveyor are incorrect. [Citation omitted.] In surveying a tract of land according to a former plat or survey, the surveyor's only duty is to relocate, upon the <u>best evidence</u> obtainable, the courses and lines at the same place where originally located by the first surveyor on the ground . . . <u>The object of a resurvey is to furnish proof of the location of the lost lines or monuments, not to dispute the correctness of or to control the original survey</u>. The original survey in all cases must, whenever possible, be retraced, since it cannot be disregarded or needlessly altered after property rights have been acquired in reliance upon it. (Emphasis added.)

<u>Vaught</u>, 116 Mont. at 549-550, 155 P.2d at 616.

The District Court stated that it believed the "best evidence" of the corner between lots one and two was the existence of the pipe monument, barrel and stake, and line of blazed trees. Therefore the court did not rely on the stake and glove referred to by Goodover but more on the testimony of Martinsen. Further, the court stated that Martinsen's evidence was more in line with the original intent of the surveyor.

Martinsen testified that he worked for Goodover searching for monuments on lot two in 1982 and on March 13, 1987. Both times he located the northeast monument, a 1½-inch pipe with a ¼-inch round rod sticking in it, with the

12

use of a metal detector. He testified that he searched for and found monuments on lots eight through twenty-one in an effort to establish the 100-foot frontage the original surveyors intended. All of these lots, he testified, had a degree variation of between two and three percent. Finally, it was Martinsen's expert opinion, relying on the pipe monument, blazed trees, stake and barrel, and line of occupation, that the proper corner monument between lots one and two was the monument he located and which he portrayed on exhibit 34. The District Court relied upon this opinion in adopting its findings of fact.

There was sufficient, credible evidence for the court to rule as it did. The general rule is that courses and distances, similar to what Schurian did with his "compass rule" location, must yield to natural or artificial monuments. Bollinger, 739 P.2d at 964; citing Buckley v. Laird (1972), 158 Mont. 483, 492, 493 P.2d 1070, 1075. Here, Martinsen located an artificial monument as opposed to the placement made by Schurian through his "compass rule." Schurian testified that he could not locate the pipe Martinsen found even though he used a metal detector. With the evidence presented by both parties, we cannot find the District Court erred where it relied on one party's evidence.

In the case of Helehan v. Ueland (Mont. 1986), 725 P.2d 1192, 43 St.Rep. 1679, the district court was presented with varying testimony from surveyors in a boundary dispute. The District Court sided with one surveyor's testimony based on reliance of an original monument. We said a trial judge's finding based on substantial though conflicting evidence will not be disturbed unless there is a clear preponderance of evidence against such finding. Helehan, 725 P.2d at 1194-1195. No clear preponderance of evidence has been

13

presented by Lindey's in this case to disturb the District Court's findings.

Both experts testified, both presented exhibits. The credibility and weight accorded witnesses is a primary function of a trial judge sitting without a jury and is of special consequences where the evidence is in conflict. Corscadden v. Kenney (1977), 175 Mont. 98, 103, 572 P.2d 1234, 1237; see also, Wortman v. Griff (1982), 200 Mont. 528, 651 P.2d 998. This rule is especially appropriate in a non-jury case where the court is faced with conflicting interpretations, testimony or opinions of expert witnesses. See, Stidham v. City of Whitefish (Mont. 1987), 746 P.2d 591, 593, 44 St.Rep. 1869, 1872.

We hold also that the District Court did not err in denying Lindey's motion for a new trial or in the alternative to amend the judgment and Jewell's motion to intervene.

The granting of a new trial or amendment of the judgment, is within the sound discretion of the trial court and will be reversed only for manifest abuse of discretion. Walter v. Evans Products Co. (Mont. 1983), 672 P.2d 613, 616, 43 St.Rep. 1844; Jankovich v. Neill (1969), 153 Mont. 337, 340, 457 P.2d 475, 477. Further, upon review, we view motions for new trials in a light most favorable to the party against whom the motion is directed. Dieruf v. Gollaher (1971), 156 Mont. 440, 446, 481 P.2d 322, 325.

Lindey's argument for new trial or amendment of the judgment is based on newly discovered evidence. At the September 17, 1987 hearing on Jewell's motion to intervene, Jewell's attorney and Lindey's counsel attempted to get evidence before the court supporting the motion for new trial. Jewell's counsel made an offer of proof that Lewis Lindemer would testify that it was discovered that the variation in lake frontage could have occurred since 1944

14

because fill material had been dumped at the site. Further, Lindemer would testify that the ½-inch pipe the court found to be secondary monumentation between lots three and five was in reality a water pipe. Lindemer had testified at the original trial but did not present this evidence at that time. The evidence could have been available but was not produced at the original trial. The basic rule for granting a new trial on newly discovered evidence is that the new evidence could not have been discovered and produced at trial with exercise of reasonable or due diligence. Rule 60(b), M.R.Civ.P.; Carbon County v. Schwend (Mont. 1984), 688 P.2d 1251, 1253, 41 St.Rep. 1874. Further, absent a showing that the new evidence would produce a materially different result, a district court does not abuse its discretion in refusing to grant a new trial. Bushnell v. Cook (Mont. 1986), 718 P.2d 665, 669, 43 St.Rep. 825. We find the District Court did not abuse its discretion in denying the motion for a new trial, or in the alternative, amending the judgment where this evidence could have been available but was not presented at trial.

As to the attempted intervention by Jewell pursuant to Rules 19 and 24(a), M.R.Civ.P., we initially note, "[t]he intervention rule is a discretionary judicial efficiency rule used to avoid delay, circuity, and multiplicity of suits." Grenfell v. Duffy (1982), 198 Mont. 90, 95, 643 P.2d 1184, 1187. At the hearing September 17, 1987, an oral offer of proof was made that a title expert would testify regarding an alleged cloud on Jewell's title.

In this case, Jewell's motion was made subsequent to the entry of judgment. Motions to intervene made after a judgment are not per se untimely, but the rule requiring timely application to intervene is, again, left to the discretion of the District Court. Rule 24, M.R.Civ.P.; In re

15

Marriage of Glass (Mont. 1985), 697 P.2d 96, 99, 42 St.Rep. 328. The District Court did not abuse its discretion in this case, Jewell's rights have not been litigated.

We affirm.

_____
Justice

We concur:

_____
_____
_____
_____
Justices

16