No. 91-612

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

YELLOWSTONE BASIN PROPERTIES,
INC., a Montana corporation, and
CENTRAL STATES RANCH COMPANY,
a Montana corporation,

Plaintiffs and Appellants,

-vs-

RON BURGESS, SURVCO CO., INC., now
known as VALHALIA, INC., and ANY
UNIDENTIFIED PERSONS OR ENTITIES
WHO MAY BE RESPONSIBLE FOR THE ACTS
OR OMISSIONS OF SURVCO CO., INC.,

Defendants and Respondents.

FILED

DEC 10 1992

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighteenth Judicial District,
               In and for the County of Gallatin,
               The Honorable Larry W. Moran, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

        R. Mark Josephson, Josephson & Fredricks, Big
        Timber, Montana

        For Respondent:

        Karl Knuchel, Livingston, Montana


                    Submitted on Briefs:  August 27, 1992

                             Decided:  December 10, 1992

Filed:

_____
                Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Plaintiffs Yellowstone Basin Properties, Inc. and Central States Ranch Company appeal the judgment of the District Court of the Eighteenth Judicial District, Gallatin County, Montana. The judgment found in favor of defendants Ron Burgess and Survco Co., Inc. on plaintiffs' claims of negligence, breach of contract and breach of warranty. We affirm.

The issues for review are restated as follows:

1. Did the District Court correctly determine that the defendants did not breach the standard of care they owed as Registered Land Surveyors?

2. Did the District Court correctly refuse to award damages based on plaintiffs' reliance upon defendants' admissions of erroneous surveys?

3. Did the District Court err in declining to determine the true locations of section corners despite the parties' express request that it make the determinations?

4. Did the District Court fail to determine whether defendants breached their contracts with plaintiffs to provide surveys for tracts of at least twenty acres?

Plaintiffs Yellowstone Basin Properties, Inc. (YBP) and Central States Ranch Company (CSR) are Montana corporations engaged in the development and sale of real property in Montana. Defendant Ron Burgess (Burgess) owned Survco Co., Inc. (Survco) during the time plaintiffs' claims arose. Burgess is a Registered Land Surveyor. Survco is a company providing professional surveying

2

services to private landowners.

From 1980 to 1983, plaintiffs contracted with defendants to survey the following real property located in Park County, Montana and to divide it into parcels of at least twenty acres for resale:

For Plaintiff CSR: Section 34, T.2S., R.9E.; Section 3, T.3S, R.9E.

For Plaintiff YBP: Sections 31, 32 and 33, T.2S., R.9E.

Survco completed the survey, with Burgess and Mike Foley, a Survco employee and Registered Land Surveyor, ultimately filing numerous Certificates of Survey and Corner Recordations with the Park County Clerk and Recorder on behalf of CSR and YBP.

This dispute centers around the location of the corner common to Sections 3, 4, 33 and 34 (in R.9E between T.2S and T.3S). The corner common to Sections 3, 4, 9 and 10 (in R.9E, T.3S) and the west quarter corner to Section 3 (in R.9E, T.3S) are also involved. These corners were originally surveyed and monumented in the 1870s by United States government survey crews.

The evidence presented at trial established the following general surveying practices: If original corner monuments cannot be found, surveyors look for other evidence which can assist in determining the original corner location. They use original government field notes obtained from the Bureau of Land Management, county records, and any available field notes and materials from other surveyors who have surveyed the area after the original corner was monumented. If there is some evidence of the corner location, the corner is said to be "obliterated." An obliterated corner is remonumented from the available evidence. If no such

3

evidence is found, surveyors term the corner as "lost" and position it proportionately from other known corner sections.

Survco surveyors could not locate the original corners at issue here. Believing them obliterated, they remonumented them. Subsequently, a question arose as to whether Survco's surveyors correctly located the obliterated corner to Sections 3, 4, 33, and 34. United States government surveyors from the Forest Service and later from the Bureau of Land Management (BLM) began to survey these same corners, and subsequentlty told Burgess in 1986 that they had found the original monuments, casting doubt on the accuracy of Survco's location.

BLM surveyors testified that they had resurveyed Section 4 but were unable to officially remonument the corners because Section 4 was sold to a private party in 1986. Although the BLM had remonumented the corner to Sections 3, 4, 33 and 34, it later removed the cap signifying an official government survey location because the preliminary resurvey had not been approved prior to the sale.

The evidence established that Survco's corner location was approximately 374 feet from the location preliminarily established by BLM as the original monument. The plaintiffs concluded that, based upon information from BLM, there was a probable encroachment. As a result, they purchased the acreage necessary to compensate for the possible encroachment on properties as the result of the defendants' survey. Plaintiffs expended over $80,000 to purchase such properties.

YBP and CSR brought this action against the defendants based on negligence in surveying, breach of contract and breach of warranty. The District Court determined that all three claims hinged on a determination of the standard of care applicable to a land surveyor in his dealings with clients. YBP and CSR appeal the District Court's decision that Burgess and Survco's other surveyors did not breach their standard of care.

## I.

Did the District Court correctly determine that defendants did not breach the standard of care they owed as Registered Land Surveyors?

The District Court found that the defendants did not breach the standard of care they owed to YBP and CSR. YBP and CSR assign clear error to this finding, claiming the District Court erred by failing to define the proper standard of care and failing to state how the defendants met the standard. They contend that several of the District Court's individual findings of fact are completely insupportable, thereby demonstrating that the District Court's ultimate finding is in error. They further contend that this "shows a lack of understanding to the important distinctions which must be made in this case regarding surveying terms and techniques."

This Court will not overturn a district court's finding of fact unless it is clearly erroneous. Interstate Production Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 322, 820 P.2d 1285, 1287. If substantial evidence in the record supports the findings, they

5

are not clearly erroneous.  Interstate Production Credit Ass'n, 820
P.2d at 1287.  Substantial evidence is evidence that a reasonable
mind might accept as adequate to support a conclusion; it consists
of more than a scintilla of evidence and may be somewhat less than
a preponderance.  Barrett v. Asarco, Inc. (1990), 245 Mont. 196,
200, 799 P.2d 1078, 1080.

YBP and CSR first claim that the wording of Finding No. 15
demonstrates clear error, specificically:

> 15.  In surveying property in Sections 31, 32, and 33 for
> YBP in 1983 Survco utilized and relied upon Ron Burgess'
> corner recordation (for the common corner of Sections 33,
> 34, 4, and 3) in locating the SW corner of Section 33
> and the SW corner of Section 32, leading to the 1983
> filing of Certificates of Survey 713, 714, and 718.
> (Emphasis added.)

YBP and CSR contend that this finding shows a lack of understanding
of the important distinctions which must be made in this case
regarding surveying terms and techniques.  Although it may be
argued that the terms "place" and "locate" have independent
significance in surveying, we do not find that difference to be
significant here.  We conclude that this is not clearly erroneous
and has no effect on the real meaning of that finding.

YBP and CSR next claim that, in Finding No. 17, the District
Court suggests that the Forest Service created the section corner
dispute and possible encroachment to force someone to buy
federally-owned Section 4.  That finding reads as follows:

> 17.  Sometime in 1986, at the request of the  U.S. Forest
> Service, the Bureau of Land Management (herein BLM),
> conducted a dependent resurvey in the Wineglass area in
> an effort to locate and establish the "original" common
> corner for Sections 33, 34, 4, and 3, and the SW corner
> of Section 33 and the SW corner of Section 32, along the

6

southern boundary of YBP's "Wineglass Ranch" property, all as part of a resurvey of Sections 4 and 6, Township 3 South, Range 9 East, Park County, Montana. The Forest Service had decided to dispose of public land in Sections 4 and 6 because such land formed an island of National Forest some five miles distant from the main body of the National Forest, and Sections 4 and 6 were land locked. The most likely buyers were adjacent landowners. No interest was shown in purchasing Sections 4 and 6 until the Forest Service notified Plaintiff YBP of a possible encroachment -- if the common corner location chosen by surveyor Donald Palmer was, in fact, the true common section corner.

Substantial evidence in the record supports this finding; thus, it is not clearly erroneous. We conclude that this finding does not suggest that the Forest Service had improper motives for surveying this property.

YBP and CSR next contend that Finding No. 18 has many clear errors which are not supported by the record or by law. The language plaintiffs object to from that finding provides:

18. Despite the extensive surveying performed by BLM, the corner common to Sections 3, 4, 33, and 34, was neither officially monumented (nor remonumented), and no certification of Corner Recordation was filed by BLM. . . .

Although it is difficult to discern what plaintiffs claim is incorrect about this finding, their argument seems to be that the District Court did not make it sufficiently explicit by including all available testimony relating to the BLM's dependent resurvey--particularly, the fact that BLM surveyors cannot legally file corner recordations and certificates of survey. Plaintiffs' argument focuses on the possible effect of the BLM's dependent resurvey if the government is required to conduct future surveying in the area. Despite plaintiffs' argument about the effect of the

7

government survey, the record clearly demonstrates that BLM did not officially remonument the corners of Section 4 and that BLM's preliminary resurvey had absolutely no legal effect here. Finding No. 17 is not clearly erroneous, nor does it ignore the law.

Plaintiffs also assign clear error to Finding No. 19, which reads as follows:

> 19. There is no question but that the dependent resurvey conducted by BLM, as involved in this action, had an effect on property boundary locations in regard to Sections 3, 4, 33, and 34. However, it appears clear in the evidence that efforts which were made to "correct" boundaries, (and acquisition of property to do so), were accomplished by Plaintiffs on a "preliminary" dependent resurvey made by BLM. Except as noted in Finding of Fact 18, the dependent resurvey was never officially completed so as to justify wholesale invalidation of Defendants' location of the corner common to Sections 3, 4, 33, and 34, or Certificates of Survey No. 490, 541, 706, 714, 718, and 828.

Again, plaintiffs' contentions center around their argument that the BLM corner location for Section 3, 4, 33 and 34 is the correct one and that the District Court did not analyze the evidence according to the law of surveying. The District Court was not required to determine the correct corner location here. Finding No. 19 is supported by the record; therefore, it is not clearly erroneous.

YBP and CSR next argue that Finding No. 20 is clear error because the District Court describes YBP's in-house surveyor's recordations (filed shortly before trial) as "illegal and inadequate" without an explanation why they are illegal or inadequate. They contend that this makes it impossible for this Court to consider the validity of Finding No. 20, which provides:

8

20. Essentially, and despite an illegal and inadequate Certified Corner Recordation (Plaintiffs' Exhibit 59) recorded shortly before trial, and in line with Findings of Fact 18 and 19, official land corner records with regard to Sections 31, 32 (except the SW corners of these sections), 33, 34, 3, 4, and 5, Townships 2 and 3, Range 9 East remain, after the BLM dependent resurvey and after trial, as they were before trial.

On May 19, 1988, David Albert, plaintiffs' in-house surveyor, filed Certificate of Survey Addenda to those filed earlier by Burgess and Mike Foley. On these Certificate of Survey Addenda, Albert used the BLM's corner location from the preliminary dependent resurvey, which was never approved for Section 4. Albert certified that he had performed no field work nor was he making a determination as to which line was correct. The evidence established that a Certificate of Survey must be signed by the Registered Land Surveyor who is responsible for the survey. Albert had nothing to do with either survey and filed documents without doing field work. There is substantial evidence in the record to support the District Court's reference to an "illegal and inadequate" survey.

Regardless of Albert's attempts to change them, Burgess' Certificates of Survey and Corner Recordation remain the only properly certified documents for the corner of Sections 3, 4, 33 and 34. However, a determination of whether or not Albert's documents are illegal or inadequate has no bearing on Finding No. 20. The substance of Finding No. 20 remains correct--this trial had no effect on corners or boundaries. It addressed negligence, breach of contract and breach of warranty issues.

Plaintiffs attack Finding No. 23 as contrary to law. It provides:

9

23. The establishment of corners and the filing of Certificates of Survey, as involved in this case, largely depends on efforts by current surveyors to follow field notes of the surveyors who originally surveyed the area. In this case, the original surveyors were William H. Baker and James H. Thomas who surveyed the area on July 4-5, 1873. It is clear to this Court, merely upon momentary reflection of the vast area involved in such survey, that it could not have been accomplished in any reasonably accurate fashion in two days. The best evidence of this fact is that it took the Forest Service and BLM about five years to complete only a minor part of what Baker and Thomas claimed to have accomplished in two days.

YBP and CSR contend that the District Court's finding that the original government survey could not have been done with reasonable accuracy suggests that the defendants' surveys and corner positions are more accurate than the original government survey. To support this argument, they cite Goodover v. Lindey's Inc. (1988), 232 Mont. 302, 310, 757 P.2d 1290, 1295, as holding:

The location of corners and lines established by the government survey, when identified, is conclusive and the true corner of a government subdivision of a section is where the United States surveyors in fact established it, whether such location is right or wrong, as may be shown by a subsequent survey.

Again, this contention of error relates to the true location of the corner which was not addressed in the plaintiffs' complaint. Finding No. 23 includes nothing contrary to Goodover, which held that right or wrong, the original corners and lines are conclusive.

YBP and CSR also contend that Finding No. 27 is erroneous. It provides:

27. Defendant Ron Burgess, prior to trial erroneously assumed that BLM personnel had officially completed and filed a survey based upon known monuments, in accordance with accepted standards of practice. For this reason he wrote the letters marked as Plaintiffs' Exhibits 18 and 22. Federal regulations prohibit reliance on preliminary

10

surveys to alter property boundary lines and disputes arising between government surveyors and private surveyors cannot be decided solely by a federal agency. In any event, final approval of BLM's survey did not occur until 1990; the approved survey affected only Section 31. Acting on their own initiative, Plaintiffs caused improper Certificates of Survey and a corner recordation certification to be compiled by YBP's in-house surveyor based wholly on BLM's unconfirmed preliminary survey, and without such surveyor conducting any field work.

Plaintiffs fault the statement that Burgess erroneously assumed that government personnel had officially completed and filed a survey according to accepted practices. They maintain that the letters speak for themselves. However, the record clearly supports the District Court's finding. Burgess' testimony adequately explained his reasons for changing his mind about the accuracy of BLM's survey. An evidentiary admission as contained in Burgess' letters is not conclusive and is always subject to explanation or contradiction. 2 J. Strong, McCormick on Evidence § 254 (4th ed. 1992).

YBP and CSR further argue that the District Court's statement that the BLM survey only affects Section 31 is incorrect and contradicts a statement in Finding No. 19. They also take issue with the statement relating to YBP's in-house surveyor's improper corner recordation and Certificate of Survey. Again, these have no affect on the holdings relating to the negligence, breach of contract and breach of warranty claims.

Plaintiffs contend that Finding No. 26 is not correct. That finding stated:

26. Here, Defendants set monuments and recorded certificates of survey and certified corner recordations

11

between 1980 and 1983. The evidence and testimony establishes that Defendants' survey work was performed and completed in accordance with standard survey practices, and consistent with the standard of care applicable to surveyors.

The District Court resolved each claim addressed in plaintiffs' complaint by concluding that each theory of liability (negligence, breach of contract and breach of warranty) depended on the ultimate issue here--whether or not the defendants breached the standard of care owed by a Registered Land Surveyor. Plaintiffs contend that the District Court should have defined the standard of care.

During the course of the trial, seven surveyors testified with regard to the standard of care for surveyors. The District Court effectively consolidated the testimony of these surveyors in Findings No. 24 and 25:

24. . . . [T]he land surveyor's work often involves retracing the footsteps of surveyors who, approximately 100 years previous, performed surveys, kept field notes and set stone monuments to establish and perpetuate section lines and corners. . . . While present-day, licensed land surveyors are required to follow local, state, and federal regulations that define present-day standards of practice while searching for ancient monuments, it is a foregone conclusion that present-day surveyors may or may not find a particular ancient monument. If a modern surveyor fails to find the ancient monument, or if he finds that the monument is obliterated, he must certify that he followed the standards of practice to remonument the location of the original surveyor. In such process, the surveyor is held to certify that he followed all of the rules and regulations in monumenting an original corner location . . . but it is impossible for him to insure that he is, in fact, standing in the 100-year old footprints of the original surveyor. . . .

25. It is possible for two qualified surveyors to meticulously follow the standards of practice for surveying while retracing a 100-year old survey, and disagree on a corner location without either being negligent. . . . Locating and remonumenting ancient

12

corner locations is not an exact science, and mere
location of a corner, or approval or disapproval of a
particular survey does not automatically establish either
compliance of [sic] non-compliance with a surveyor's
standard of care.

At the close of the trial, the District Court complimented plaintiffs' counsel on the manner in which he presented a very difficult technical case. The District Court's Findings of Fact and Conclusions of Law, when considered as a whole, demonstrate that the court carefully considered the evidence and based its findings and conclusions upon the totality of the evidence presented. Although the District Court did not specifically state the standard of care for land surveyors, it cited with approval an earlier Montana case addressing surveying standards, which provides:

In surveying a tract of land according to a former plat
or survey, the surveyor's only duty is to relocate, upon
the best evidence obtainable, the courses and lines at
the same place where originally located by the first
surveyor on the ground.

Vaught v. McClymond (1945), 116 Mont. 542, 550, 155 P.2d 612, 616-17, (emphasis original) (quoting 8 Am. Jur. Boundaries, § 102 (1937).

In Vaught, this Court remanded the case and instructed:

The survey should be made pursuant to the statutes
prescribing the rules regulating the survey of government
lands and in accordance with instructions and regulations
issued thereunder by the general land office for the
guidance of county surveyors and others in ascertaining
boundary lines created by the government survey and in
relocating corners or monuments theretofore established
which may have been lost or obliterated.

Vaught, 116 Mont. at 559, 155 P.2d at 620.

The defendants presented extensive evidence to establish that

13

they complied with rules and regulations as set forth in Bureau of Land Management, U.S. Department of the Interior, Manual of Surveying Instructions (1973). Testimony by defendent Burgess and six other surveyors established that this 1973 manual is the approved source relied on by both government surveyors and Registered Land Surveyors. The surveyors testified in detail as to what was considered the "best evidence obtainable." The best evidence includes original government field notes, county records and field notes from other surveyors who have surveyed the land, if available. We conclude that a surveyor who complies with rules and regulations as set forth in the approved source, currently the 1973 Manual of Surveying Instructions, and who uses the best evidence obtainable meets the standard of care required for Registered Land Surveyors.

The District Court found that the evidence and testimony established that Survco's survey was performed and completed in accordance with standard survey practices and, therefore, was consistent with the standard of care. The defendant Burgess was called as a witness and he confirmed the standard of care as being the same as outlined above by the plaintiffs' witnesses. Our review of the record confirms the presence of substantial evidence to establish that the survey work of the defendants was performed as described in Finding No. 24.

The District Court, as trier of fact, is in the best position to determine the facts by assessing the demeanor of the witnesses, the testimony presented and the totality of the evidence before the

14

court. General Mills, Inc. v. Zerbe Bros., Inc. (1983), 207 Mont. 19, 23, 672 P.2d 1109, 1111. Further, the District Court is not obligated to outline in its findings all of the testimony presented at the trial. McConnell-Cherewick v. Cherewick (1983), 205 Mont. 75, 83-84, 666 P.2d 742, 746. The court concluded that YBP and CSR failed to establish by a preponderance of the evidence that the defendants were negligent or that they did not perform their duties with a reasonable degree of care and skill. Plaintiffs contend that to uphold the District Court's analysis would overturn decades of established law governing surveyor conduct. This contention is not supported by the court's findings and conclusions. The record contains substantial evidence to support the ultimate conclusion made by the District Court that the defendants did not breach the standard of care.

We hold that the District Court correctly determined that the defendants did not breach the standard of care they owed as Registered Land Surveyors.

II.

Did the District Court correctly refuse to award damages based on plaintiffs' reliance upon defendants' admissions of erroneous surveys?

YBP and CSR contend that they relied on defendant Burgess' admissions in two letters discussing the possibility that Survco's survey was erroneous and, therefore, Burgess "must be estopped from reneging on these admissions upon which Plaintiffs detrimentally relied." Burgess wrote two letters--one to his attorney and the

15

other to Howard Zeman, a BLM employee. In his letter to his attorney, Burgess noted: "It is generally agreed, the line is incorrect and a great number of Yellowstone Basin Properties' tracts erroneously encroach on about 31.6 acres in Section 4 and 6.7 acres in Section 6." Burgess' letter states that he felt a moral obligation to try and resolve the problem created by the erroneous survey done by Survco. He also noted that YBP had blocked the only viable solution that had been discovered. In his letter to Howard Zeman, Burgess stated that Survco failed to find some original stones which BLM surveyors later found. However, Burgess testified that he was led to believe that the government surveyors had followed their own regulations, when in fact they may not have done so. The evidence presented during the trial revealed that no one had found the original corner monument for Sections 3, 4, 33 and 34.

The District Court found, and the testimony confirms, that surveying is not an exact science and surveyors are not insurers of their work. Burgess' commendable attempts to assist YBP in finding a solution to the possible encroachment illustrate his good faith efforts to correct problems which arose after Survco's survey. At the time, he believed that government surveyors had found the original corner monument to Sections 3, 4, 33 and 34. Admissions such as those made by Burgess, even if they subsequently are proven to be supportable by evidence at a trial, do not conclusively establish a breach of the standard of care. The testimony established that two surveyors, both meeting surveying standards,

16

may find different corner locations for obliterated corners with neither of them being negligent.

The BLM conducted a dependent resurvey in the area of Sections 4 and 6 of Township 3 South, Range 9 East. A dependent resurvey is a retracement and reestablishment of the original survey lines in their true original positions according to the best available evidence of the positions of the original corners. Manual of Surveying Instructions, at 145. A dependent resurvey is not official or binding on the United States government until and unless it is approved by the Director of the BLM. Manual of Surveying Instructions, at 149. The government's dependent resurvey did not ultimately encompass the corner for either Sections 3, 4, 33 and 34 or Sections 3, 4, 9 and 10. The District Court found that federal regulations "prohibit reliance on preliminary surveys to alter property boundary lines and disputes arising between government surveyors and private surveyors cannot be decided solely by a federal agency." The plaintiffs purchased additional land to correct a possible encroachment without a reliable determination of the accuracy of Survco's survey or a judicial determination of the corner monument location. They purchased this additional land from a private party after the government no longer owned Section 4. They relied upon representations made by government surveyors prior to an official, binding government resurvey. The regulations state: "No alteration in the position of improvements or claim boundaries should be made in advance of the official acceptance of the

17

resurvey." Manual of Surveying Instructions, at 149. We cannot say that plaintiffs' decision to purchase more property was justified as long as the correct corner location remained in dispute.

We also cannot say that plaintiffs were justified in relying on admissions made by Burgess without confirmation from the BLM. Whether or not defendants should be estopped from retracting admissions has no relation to liability. As noted above, surveyors are not insurers--their duty is to complete a survey using the best evidence available to them according to the accepted rules and regulations. Plaintiffs are sophisticated businesses who employed an in-house surveyor who was licensed as a Registered Land Surveyor and familiar with the 1973 Manual of Surveying Instructions. Plaintiffs made a business decision to purchase additional land. We conclude that their reliance upon Burgess' admissions was not justified and they are not entitled to equitable damages based on such reliance.

We hold that the District Court did not err in refusing to award damages to YBP and CSR based on justifiable reliance upon Burgess' admissions of erroneous surveys.

### III.

Did the District Court err in declining to determine the true locations of section corners despite the parties' express request that it make the determinations?

YBP and CSR contend that the District Court erred by not determining which of the two surveys should be accepted as the

18

original corner location to Sections 3, 4, 33 and 34. The District Court expressly declined to rule on this issue, stating:

> The Complaint filed by Plaintiffs <u>does not</u> seek judicial determination of any survey, or any corner location. Rather, it reflects that the sole relief desired by Plaintiffs is monetary damages based upon any of three theories: breach of contract, breach of warranty, and negligence.

Plaintiffs' in-house surveyor, David Albert, relied on the BLM survey and did no field work prior to filing his addenda to Burgess' Certificates of Survey. Substantial evidence was presented which cast doubt on the BLM preliminary resurvey. From the record, it does not appear that BLM surveyors followed surveying rules and regulations. Therefore, the District Court only had evidence of one survey which conformed to the required standards--that of Survco. We conclude that the District Court correctly refused to adjudicate the corner location based on the totality of the evidence presented during the trial.

We hold that the District Court did not err by declining to determine the true locations of section corners despite the parties' express request that it make those determinations.

### IV.

Did the District Court fail to determine whether defendants breached their contracts with YBP and CSR to provide YBP and CSR with surveys of twenty-plus acre tracts?

YBP and CSR contend that the District Court failed to rule on whether the defendants breached their contracts to survey the property. The District Court expressly stated:

> . . . Interestingly enough, to [recover damages] under

19

each theory advanced by Plaintiffs requires establishment of the same basis for liability, (summarized very nicely in Plaintiffs' Complaint, paragraph 20, page 5):

"Defendants . . . failed to follow regular accepted survey standards in failing to exercise accepted standards of care, prudence and skill."

The District Court held that YBP and CSR failed to produce sufficient evidence for liability based on this standard. YBP and CSR contracted with Survco to provide surveys of twenty-acre tracts. This is what they received. The District Court stated that YBP and CSR

> failed to produce, consistent with the noted basis for liability, sufficient evidence upon which Defendants' liability may be established. The Court views the totality of the evidence as indicating that Defendants' surveying activities were neither haphazard or arbitrary, nor were they precipitous or based upon a lack of diligence. Rather, the record reflects that Defendants made a careful and studied analysis of circumstances encountered in the course of rendering surveying services, and based decisions upon this same careful and studied analysis, fully consistent with surveyors' accepted standards of "care, prudence and skill." The fact that Defendant Burgess may have admitted errors in surveying . . . is, essentially, irrelevant to the issue of whether Defendants' performance met the relevant criteria of the applicable standard of care, prudence and skill upon which Defendants' liability must be based.

YBP and CSR contend that if the corners are located where the BLM survey located them, there is a breach because some of the lots will be less than the twenty-acre lots they contracted for. The fact remains that Survco provided competent surveys of twenty-acre lots, whether or not those lots encroached upon Section 4. Plaintiffs' three-paragraph argument on this issue is unconvincing and fails to set forth any authority to support this theory for a breach of contract. We conclude that the contract was not

20

breached.

We hold that the District Court did not err because it did in fact determine that Burgess and Survco did not breach the contracts to provide YBP and CSR with surveys of twenty-plus acre tracts.

We affirm the District Court on all issues presented.

_____
Justice

We Conur:

_____
Chief Justice

_____

_____

_____
Justices

21

December 10, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


R. Mark Josephson
JOSEPHSON & FREDRICKS
P.O. Box 1047
Big Timber, MT 59011

KARL KNUCHEL
Attorney at Law
P.O. Box 953
Livingston, MT 59047


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
      Deputy