No. 83-212

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

_____

JAMES NEDROW PILGRIM,

      Plaintiff and Appellant,

  -vs-

JOHN KUIPERS, et al.,

      Defendants and Respondents.

_____

APPEAL FROM: District Court of the Fifth Judicial District,
In and for the County of Beaverhead,
The Honorable Nat Allen, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Thomas Dooling, Dillon, Montana

    For Respondents:

        W. G. Gilbert, III, Dillon, Montana

_____

Submitted on Briefs: February 2, 1984

Decided: April 9, 1984

Filed: APR 9 1984

_____
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

James Nedrow Pilgrim appeals from an order of the Fifth District Court, Beaverhead County, quieting title to two separate tracts of land in Pilgrim and defendant John Kuipers. We affirm.

The disputed property line originated when Pilgrim sold a portion of his property to one of Kuipers' predecessors in interest (Brooks), retaining the remaining tract to himself.

The property description in this deed (Pilgrim to Brooks) contained at least one error and is demonstrably unreliable in that it does not close. The relevant part of the description is set forth as follows:

"(c) Beginning at quarter corner on East and West line between Sections 7 and 18, Township 7 South, Range 8 West; thence North 11° 45' East 715 feet; thence North 69° 30' East 602 feet; thence South 19° 00' West 675 feet to approximate center of channel of Beaverhead River South 68° 09' West 253 feet; thence South 86° 30' West 230 feet, more or less to easterly right-of-way line of Federal Aid Project No. 241 D (3) at approximate center of channel of said river; running thence Southerly along said right-of-way line 190 feet more or less; thence South 89° 07' West 96.2 feet, more or less, to point of beginning, comprising 7.57 acres, more or less, in the Southwest Quarter of Southeast Quarter of Section 7, Township 7 South, Range 8 West, M.P.M."

At the time of the Pilgrim to Brooks conveyance, a "fox farm" fence existed in the approximate area of the line dividing the two properties. The deed, however, makes no reference to the fence; the conveyed property is described only by the metes and bounds description referred to above. This description originated with a survey made of the property at the time of the Pilgrim to Brooks sale.

A dispute arose when Kuipers removed part of the "fox farm" fence and began to build a garage partially on Pilgrim's side of the fence. During the dispute, the difficulties with the property description were discovered.

2

Roger Pierce, a surveyor, attempted to reconcile, to the extent possible, the property description with the undisputed boundaries and monuments on the land. The trial court concluded that "the Pierce survey, when modified according to correct surveying practices and the provisions of section 70-20-201, MCA not only will close, but will describe a tract of land retained by the grantor, Pilgrim, containing an acreage within 20/100th of an acre of the amount stated in his deed". The court also noted that the boundary in the "Pierce survey" varies from another survey of the disputed boundary by only 39 feet at the northern end, and is effectively coincident at the southern point.

The court ordered that the titles to the respective properties be quieted in accordance with the Pierce survey. Pilgrim appeals from the final judgment.

The following issues are raised on appeal:

1. Whether the trial court erroneously excluded evidence under the parol evidence rule.

2. Whether the surveying practices used in the Pierce survey are proper and in accordance with section 70-20-201, MCA.

3. Whether the findings and conclusions of the trial court are "clearly erroneous?"

Appellant argues that it is "impossible to reconcile the written legal description of the property with its admitted boundaries on the ground." Appellant reasons that extrinsic evidence is therefore competent and necessary to establish the true boundary of the property conveyed by the deed. We disagree.

Sections 70-20-201 and 70-20-202, MCA are to be read together. The rules of construction in section 70-20-201, MCA resolve inconsistencies in the descriptive part of a

3

conveyance. The effect of this section cannot be circumvented by resort to extrinsic evidence under the "ambiguity" clause of section 70-20-202, MCA. If the description in the written conveyance can be reasonably construed pursuant to such rules, extrinsic evidence cannot be used to <u>contradict</u> such a construction. That is the case here.

Appellant argues that the proper surveying practices and rules of construction were not used in this case. The relevant statute is section 70-20-201, MCA which provides:

> "Rules for construing description. The following are the rules for construing the descriptive part of a conveyance of real property when the construction is doubtful and there are no other sufficient circumstances to determine it:
>
> "(1)   Where there are certain definite and ascertained particulars in the description, the addition of others which are indefinite, unknown, or false does not frustrate the conveyance, but it is to be construed by the first mentioned particulars.
>
> "(2)   When permanent and visible or ascertained boundaries or monuments are inconsistent with the measurement, either of lines, angles, or surfaces, the boundaries or monuments are paramount.
>
> "(3)   Between different measurements which are inconsistent with each other, that of angles is paramount to that of surfaces and that of lines paramount to both. . . ."

Appellant concedes that Highway 91 is a monument which establishes the western boundary of the Pilgrim property, and that the Stahl fence is also a monument correctly located on the northern boundary of the tract. Appellant cannot contest that a third monument establishes the southern boundary of the tract: the Beaverhead River.

The final boundary is prescribed by these "definite and ascertained" boundaries using the rules of construction. Section 70-20-201(1), (2), MCA. Section 70-20-201(2), (3), MCA sets the heirarchy of particulars to be considered.

4

Monuments are superior to lines (distances) which are superior to angles which are superior to surfaces. Since there are no monuments establishing the final boundary, reference must be made to the distances along the other boundaries. These distances, from the deed, are 602 feet along the northern boundary and 230 plus 253 feet along lines following the thread of the Beaverhead River.

The Pierce survey correctly used these distances to establish the location of the final boundary. The reasonableness of this construction finds support in the fact that the Pierce survey encloses 7.37 acres as compared with 7.57 called for in the deed.



Appellant argues that the old "fox farm" fence is also a monument which establishes the final boundary. We disagree. There is a critical distinction between a fence which establishes a boundary line, and a fence that merely separates one side of the fence from the other. The former is a monument as well as a fence, while the latter is merely a fence. Unlike the highway right-of-way and the Beaverhead River, there are no calls in the legal description to the "fox farm" fence. There is no evidence that the fence line was surveyed or that the fence was built to conform to a surveyed line. One witness testified that the fence was

5

built zig-zag apparently around trees and without any pattern at all. Another said it "jogged" by as much as 20 feet. In contrast, the legal description calls for a straight line. There simply is no evidence to support the fence as a monument.

Nor does a fence establish a boundary line when it does not conform to the true line, even though the property owners thought it was the boundary.

> "Where two adjoining properties are divided by a fence, which both owners suppose to be on the line, such fence is a division fence, as between them, until the true line is ascertained, when they must conform to the true line."

Schmuck v. Beck (1925), 72 Mont. 606, 616, 234 P. 477, 481; Tillinger v. Frisbie (1957), 132 Mont. 583, 586, 318 P.2d 1079, 1083; Reel v. Walter (1957), 131 Mont. 382, 309 P.2d 1027, Myrick v. Peet (1919), 56 Mont. 13, 180 P. 574.

From the facts and argument above, it is clear that the trial court's judgment to establish the disputed boundary in accordance with the Pierce survey was not "clearly erroneous," but was a well supported and reasoned decision.

Affirmed.

Justice

We concur:

Justices