George C. KIMBALL and Beverly T. Kimball, Appellants (Plaintiffs),

v.

Lowell H. TURNER and Opal H. Turner, Appellees (Defendants).

No. 98–165.

Supreme Court of Wyoming.

Dec. 17, 1999.

Representing Appellants: Joseph B. Bluemel, Kemmerer, WY.

Representing Appellees: Gerald L. Goulding, Afton, WY.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

LEHMAN, Chief Justice.

The descendants of Rawsel Turner (Rawsel) are quarreling over 7.3 acres of family ground. Although the 7.3 acre parcel was homesteaded by Rawsel's son, Deloss Turner, it is enclosed within a fence erected by Rawsel. Rawsel's successors in interest sought to quiet title in the property by adverse possession or, in the alternative, asserted that the property boundary had been altered by recognition and acquiescence. The district court rejected both theories, finding that the fence was not a boundary fence, but one of convenience. Because we conclude that the district court's finding is not clearly erroneous, we affirm.

* Retired November 2, 1998.

## ISSUES

Appellants present four issues for our review:

1. Whether the Court committed error in granting the Plaintiffs only part of the disputed property.

2. Whether the Court committed error in finding that Plaintiffs did not meet the requirements to establish a boundary by implied acquiescence.

3. Whether the Court committed error in finding that the Plaintiffs did not fulfill the requirements for adverse possession.

4. Whether the Court committed error in finding that the fence in question was a fence of convenience.

Appellees accept the first three issues as stated by the appellants, but rephrase the fourth issue in this manner:

Whether the trial court committed error in finding "that the facts and circumstances of this case are not equivalent to an express agreement to make the fence the boundary line."

## FACTS

In 1915, Rawsel Turner received a United States patent to 78 acres in Lincoln County near Bedford. Sometime between 1915 and 1920, Rawsel erected a fence in the vicinity of the southern boundary of his property. Actually, the fence was located beyond the southern boundary of Rawsel's land, and it enclosed approximately 7.3 acres of land which was then owned by the United States Forest Service. In 1929, Rawsel's son, Deloss Turner, received a patent to the Forest Service land immediately south of Rawsel's. Since this time, the fence has been maintained in the same location.

Over the years, the Rawsel and Deloss properties were passed down among the Turners. Rawsel's land was eventually conveyed to his son Clifford Turner. Clifford and his wife Ruth have, in turn, passed it on to their children. In 1983, Clifford and Ruth deeded an acre of land in the southwest corner of their property to their daughter Carol Lucy

Downes. Believing the fence to constitute the southern boundary, Mrs. Downes and her husband placed their home on the now disputed property. The appellants in this case, Beverly Kimball (Clifford and Ruth Turner's oldest daughter) and her husband George are fee owners of a majority of the parcel homesteaded by Rawsel.

In the meantime, Deloss' land was also passed down through the generations. The appellees, Lowell Turner (Deloss' son) and his wife Opal currently own most of the land homesteaded by Deloss. When Lowell and Opal decided to convey parcels to their children for them to build on, a survey was required. At this time, around 1992, the surveyor noticed the fence was not located on the property boundary. Other surveys followed, and the parties eventually learned that the fence enclosed 7.391 acres of largely undeveloped land located within Lowell and Opal Turner's property description. The property in question is partially forested and rises steeply to the east.

When Lowell and his son Kory Turner began erecting a fence on the true property line, the Kimballs and Carol Downes instituted this action. They first requested, and were granted, a restraining order. At the same time, the Kimballs and Downes sought to quiet title to the disputed 7.3 acres, claiming the property by adverse possession. In the alternative, they claimed that the fence had altered the boundary under the doctrine of recognition and acquiescence. After a bench trial, the district court rejected both theories as they relate to the Kimballs, finding that the fence constitutes a fence of convenience. However, the district court ruled in favor of Downes and quieted title to one acre of the disputed parcel in her. The remainder of the disputed property was quieted in Lowell and Opal Turner, the appellees. The Kimballs timely appeal.

### STANDARD OF REVIEW

■■■ Whether a fence is a boundary fence or merely one of convenience is a question of fact. *Hillard v. Marshall*, 888 P.2d 1255, 1260 (Wyo.1995). This court will not set aside a district court's findings of fact unless the findings are clearly erroneous or

contrary to the great weight of the evidence. *Id.; Sowerwine v. Nielson*, 671 P.2d 295, 301 (Wyo.1983); *Stansbury v. Heiduck*, 961 P.2d 977, 978 (Wyo.1998). When reviewing the record, we keep in mind the following principles:

> The judge who presided at the trial heard and saw the witnesses. He is in the best position to determine questions of credibility and weigh and judge the evidence, both expert and non-expert. Thus, on appeal, it is a firmly established and oft-stated rule that we must accept the evidence of the successful party as true, leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference that may fairly and reasonably be drawn from it.

*Hillard v. Marshall*, 888 P.2d at 1260 (quoting *Sowerwine v. Nielson*, 671 P.2d at 301). We review a district court's conclusions of law *de novo*. *Stansbury v. Heiduck*, 961 P.2d at 978.

### DISCUSSION

#### Adverse Possession

■■■ To establish adverse possession, the claiming party must show actual, open, notorious, exclusive and continuous possession of another's property which is hostile and under claim of right or color of title. *Stansbury v. Heiduck*, 961 P.2d at 979; *Hillard v. Marshall*, 888 P.2d at 1258; *Rutar Farms & Livestock, Inc. v. Fuss*, 651 P.2d 1129, 1132 (Wyo.1982). Possession must be for the statutory period, ten years. Wyo. Stat. Ann. § 1–3–103 (Lexis 1999); *Hillard v. Marshall*, 888 P.2d at 1258; *Connaghan v. Eighty–Eight Oil Co.*, 750 P.2d 1321, 1323 (Wyo.1988). Where there is no clear showing to the contrary, a person who has occupied the land for the statutory period, in a manner plainly indicating that he has acted as the owner thereof, is entitled to a presumption of adverse possession; and the burden shifts to the opposing party to explain such possession. *Hillard v. Marshall*, 888 P.2d at 1259; *Meyer v. Ellis*, 411 P.2d 338, 342 (Wyo.1966); *City of Rock Springs v. Sturm*, 39 Wyo. 494, 517, 273 P. 908, 915–16

(1929). However, if a claimant's use of the property is shown to be permissive, he cannot acquire title by adverse possession. *Hillard v. Marshall*, 888 P.2d at 1259; *Meyer v. Ellis*, 411 P.2d at 344.

In some circumstances, enclosing land in a fence is sufficient to "raise the flag" of an adverse claimant. *Meyer v. Ellis*, 411 P.2d at 343; *Doenz v. Garber*, 665 P.2d 932, 936 (Wyo.1983); *Hillard v. Marshall*, 888 P.2d at 1259. However, a fence kept simply for convenience has no effect upon the true boundary between tracts of land. *Sowerwine v. Nielson*, 671 P.2d at 297; *Hillard v. Marshall*, 888 P.2d at 1260. This is so because a fence of convenience creates a permissive use, and a permissive user

> cannot change his possession into adverse title no matter how long possession may be continued, in the absence of a clear, positive and continuous disclaimer and disavowal of the title of the true owner brought home to the latter's knowledge; there must be either actual notice of the hostile claim or acts or declarations of hostility so manifest and notorious that actual notice will be presumed in order to change a permissive or otherwise non-hostile possession into one that is hostile.

*Hillard v. Marshall*, 888 P.2d at 1261 (quoting *Stewart v. Childress*, 269 Ala. 87, 111 So.2d 8, 13 (1959)).

■ After a bench trial, the district court found that the fence erected by Rawsel was a fence of convenience and ruled that the Kimballs had not established their claim for adverse possession.[1] In making its ruling, the district court could have followed either of two routes. *Hillard v. Marshall*, 888 P.2d at 1260. First, it could have concluded that the Kimballs had not made a prima facie case of adverse possession because the convenience fence was an explanatory circumstance to the contrary; or, second, it could have found that the Kimballs had made out a prima facie case but concluded that the evidence that the fence was one of convenience rebutted the presumption of adverse possession. ·Although the record does not reveal which of

these means the trial court employed to arrive at its decision, it does not matter. Under either scenario, the district court's decision would stand; if the evidence that the fence was one of convenience is sufficient to establish that fact in the first place, then it is sufficient to rebut the presumption. *Hillard v. Marshall*, 888 P.2d at 1260. Thus, the question for this court is whether the district court's finding of a convenience fence is clearly erroneous. We conclude it is not.

■ The district court summarized its findings in this fashion:

> [T]he physical appearance of the fence ... clearly demonstrates that it could not have been constructed as a boundary fence. To call the structure a fence is generous. It consists of 3 wires meandering between trees, bushes, and fence posts in an irregular fashion. It appears from the physical appearance that someone walked in the east-west direction stringing barbwire from tree to tree, placing fence posts when trees or bushes were not available. The irregular course of the fence clearly indicates that it was not constructed on a section line, a quarter section line, or any other line of a U.S. governmental subdivision parcel. Even to a casual observer, it is obvious that whoever built the fence never intended to strictly follow the straight line demarcation of a U.S. Government subdivision description. Clearly, the fence was constructed by Rawsel as a convenient way of separating his homestead from the public domain. The Court is not able to find and conclude that Rawsel constructed the fence as a boundary.

Besides these findings, which are supported by photographs and testimony, the district court's decision is buttressed by testimony from Lowell Turner. Lowell, who has been around the Turner land all his life, provided insight into how Rawsel and Deloss viewed the fence. Lowell testified that Rawsel and Deloss never treated the fence as a boundary fence. Instead, it was simply used to separate Rawsel's and Deloss' cattle. If cows

---

1. Because adverse possession cannot be acquired against the government, we are only concerned with circumstances that followed Deloss Turner's acquisition of his property from the United States Forest Service. *Porter v. Carstensen*, 40 Wyo. 156, 160, 274 P. 1072, 1073 (1929).

escaped, the owner would simply retrieve them.

Even after Rawsel and Deloss had passed the property on, both the north and south Turners went back and forth freely on the now disputed property. None of the Turners asked permission to use the property because the land was seen as "family ground." Lowell also testified that his father, Deloss, had always said the fence was "off," meaning not on the property line. One of Lowell's sons, Kory Turner, testified that he had also been told all his life that the fence was off. Besides the manner in which the fence was constructed, the manner in which the Turners treated the fence and the now disputed property supports the district court's finding that the fence was not intended to serve as a boundary fence. See *Pilgrim v. Kuipers*, 209 Mont. 177, 679 P.2d 787, 790 (1984).

The Kimballs next contend that the district court's judgment is inconsistent because the district court quieted title in Downes, who had built a home on one acre of the disputed property, but not in the Kimballs. Relying on *Kranenberg v. Meadowbrook Lodge, Inc.*, 623 P.2d 1196 (Wyo.1981), the Kimballs argue that the facts that supported the finding of adverse possession for Downes mandate a finding of adverse possession for the entire disputed parcel. We disagree.

We have previously rejected the Kimballs' all-or-nothing view of adverse possession. A similar argument was before this court in *Hillard v. Marshall.* There we wrote:

> Hillard argues that *Kranenberg v. Meadowbrook Lodge, Inc.*, 623 P.2d 1196 (Wyo. 1981) establishes the rule that adverse possession is an all-or-nothing proposition. He asserts that since the possession of the nine-acre tract arose out of the same set of circumstances as the fourteen-acre tract, by adversely possessing one he necessarily had to have adversely possessed the other.
>
> In *Kranenberg*, the adverse claimant had built a portion of his home on the defendant's land. A contiguous tract of that land was also used by the claimant as a yard, including the placement of a swing set, a sandbox, a barbecue and a root cellar. *Kranenberg*, 623 P.2d at 1197–98. The district court found that the claimant

had adversely possessed the portion around the house but not that portion which was utilized as a yard. *Kranenberg*, at 1196. We reversed, holding that the continuous possession of the entire portion of the property for the same purpose, residential use, was sufficient to show adverse possession. Since the defendant had failed to demonstrate a permissive use, we concluded that the claimant had adversely possessed the entire tract. *Kranenberg*, 623 P.2d at 1199–1200.

> *Kranenberg* is distinguishable from this case. Here the land claimed is neither contiguous nor was used for the same purposes. Hillard used the fourteen-acre tract mainly for farming, while the nine-acre tract was exclusively used for grazing purposes. Further, the fact that the two parcels are physically separate could mean there are different reasons for them being fenced in, as the trial court found to be the case here. Although the tracts were created at the same time, their non-contiguous nature and the different uses on each requires the adverse claimant to prove his case for each tract individually. Hillard failed to do that. *Kranenberg* is not applicable.

*Hillard v. Marshall*, 888 P.2d at 1261.

Here, as in *Hillard v. Marshall*, the two parcels have not been used for the same purposes. Since Downes moved her home onto the property in 1983, the acre quieted in her has been used for residential purposes. In fact, Downes' property is separated from the rest of the disputed parcel by a fence erected to prevent cattle from grazing on her land. The fencing and placement of structures upon land belonging to another can give rise to a claim for adverse possession. *State v. Moore*, 356 P.2d 141, 146 (Wyo.1960). Meanwhile, the balance of the disputed parcel has been used mainly for pasturage and recreational purposes, consistent with the historical, permissive use of the family ground.

In addition, by moving her home onto the property, Downes acted in a manner that changed the use of the property from permissive to hostile. Where, as in Downes'

case, a parties' predecessor in interest held the disputed property by permission and not hostilely, a claim of adverse possession must fail. *Miller v. Stovall,* 717 P.2d 798, 805 (Wyo.1986); *Johnson v. Szumowicz,* 63 Wyo. 211, 230, 179 P.2d 1012, 1018 (1947). However, a permissive user may change his possession into adverse title with a clear, positive, and continuous disclaimer and disavowal of the title of the true owner brought home to the latter's knowledge. *Hillard v. Marshall,* 888 P.2d at 1261; *Miller v. Stovall,* 717 P.2d at 805. "[T]here must be either actual notice of the hostile claim or acts or declarations of hostility so manifest and notorious that actual notice will be presumed in order to change a permissive or otherwise non-hostile possession into one that is hostile." *Hillard v. Marshall,* 888 P.2d at 1261. Here, although the southern Turners knew the fence was "off," they did not know how far off. Despite this, Downes' home was located close enough to the fence that the southern Turners were on actual notice that she was building on the now disputed property. Indeed, Lowell Turner admitted he was aware that Downes had moved her home on the land. By placing a home on the property, Downes had unfurled her flag in such a manner that the Turner appellees were on actual notice of her hostile possession. Thus, when she moved a home onto the property in 1983, Downes changed possession from permissive to hostile.

Finally, besides finding that Downes had adversely possessed the acre she claimed, the district court also relied on an estoppel theory. Because the Turner appellees stood by and did nothing while Downes built on the property, the district court ruled that they were estopped from asserting ownership to Downes' parcel. We conclude that the circumstances of Downes' claim for adverse possession are sufficiently different from those surrounding Kimball's claim that separate treatment is warranted. The district court did not err in ruling in favor of Downes but against the Kimballs.

### Recognition and Acquiescence

The Kimballs also rely on the doctrine of recognition and acquiescence to argue that the fence has altered the boundary. This court, per Justice Blume, first described this doctrine in *Carstensen v. Brown,* 32 Wyo. 491, 500–502, 236 P. 517, 520–21 (1925):

It is well settled that parties may make an express parol agreement as to a boundary line. But, to have a basis for consideration, it must be in dispute or uncertain and not readily ascertainable, and, to take it out of the statute of frauds, it must be followed up by occupancy by the parties in accordance with such agreement, up to the line agreed on. It would seem that the elements of mistake involved, both in estoppel as well as adverse possession, are eliminated in a case when parties deliberately enter into an agreement under such conditions, in the absence of special circumstances which would relieve a party from a mistake, because want of knowledge of the true boundary, and uncertainty thereof, is made the very basis of the agreement. The doctrine of recognition and acquiescence would seem to be based primarily, though not solely, upon the same principles as an express agreement.... However, ... an agreement to fix an uncertain or disputed boundary need not be express, but may be implied, and may be shown by the conduct of the parties.

. . .

... *[T]he existence of a division fence does not alone show the requisite facts. It may be kept up only for the convenience of the parties.* But we think we may safely say that when there is recognition and acquiescence of the parties in a boundary line, uncertain or in dispute in the first instance, for a period equal at least to the prescriptive period, under facts and circumstances which should be considered equivalent to an express agreement, and the land on each side of the line is occupied by the respective parties as their land, no good reason exists why the parties should not be bound to the same extent as though such express agreement had been made and carried out, particularly when facts exist which would make any other holding inequitable.

(Citations omitted; emphasis supplied.)

The Kimballs complain that the district court improperly applied the doctrine of rec-

ognition and acquiescence by requiring the Kimballs to prove an express agreement that the fence would be considered the boundary. They correctly point out that such an agreement need not be express, but may be implied from the parties' conduct. Moreover, "[l]ong practical acquiescence is regarded as the equivalent of an agreement." *Carstensen v. Brown*, 32 Wyo. at 501, 236 P. at 521.

We disagree with the Kimball's assertion that the district court denied this claim solely because there was no express agreement. While the district court recognized that no express agreement was reached, it also concluded that "the facts and circumstances of this case are not equivalent to an express agreement to make the fence the boundary line." For the following reasons, we interpret this language to be a finding that there was no implied agreement that the fence be a boundary. First, this finding by the district court was preceded by a paragraph in which the district court found no express agreement that the fence be a boundary. If the district court had, as the Kimballs claim, required them to prove an express agreement, nothing further need have been said. However, the court went on to make a finding that the facts and circumstances of the case were not the *equivalent* of an express agreement. In making this finding, the district court tracked language found in *Carstensen v. Brown* that discusses implied agreements. It is clear that the district court made a finding that no implied agreement existed; we, therefore, reject the Kimballs' claim that the district court required them to prove an express agreement.

■ In any event, the district court's decision is supported by more than one ground. In ruling on this issue, the district court also relied on its previous finding that the fence was not a boundary fence, but a fence of convenience. As *Carstensen v. Brown* teaches, "the existence of a division fence does not alone show the requisite facts. It may be kept up only for the convenience of the parties." 32 Wyo. at 501–502, 236 P. at 521; *Johnson v. Szumowicz*, 63 Wyo. 211, 229–30, 179 P.2d 1012, 1018 (1947). This was the case here, and the district court appropriately denied the Kimball's claim based on this

ground. *State v. Vanderkoppel*, 45 Wyo. 432, 438–39, 19 P.2d 955, 957 (1933).

Finally, *Carstensen v. Brown* indicates that the equities of the case play a role in determining a claim of boundary by recognition and acquiescence. 32 Wyo. at 502, 236 P. at 521. On this issue, the district court wrote:

> [T]here is nothing inequitable about ruling that [the Kimballs] are to retain the raw, unimproved, undeveloped property contained within their property description; and that [the appellees] are to retain the same kind of property contained within their description.

We cannot disagree. The decision of the district court on this issue is affirmed.

### CONCLUSION

"There is a critical distinction between a fence which establishes a boundary line, and a fence that merely separates one side of the fence from the other. The former is a monument as well as a fence, while the latter is merely a fence." *Pilgrim v. Kuipers*, 209 Mont. 177, 679 P.2d 787, 790 (1984). In this case, the district court's finding that the fence constitutes a fence of convenience is not clearly erroneous. This finding precludes both the adverse possession claim as well as the claim that the boundary had been altered by recognition and acquiescence. The decision of the district court is affirmed.