**Lottie LAKE, Randy England, James R. Lake and Donald E. Lake, Appellants (Plaintiffs),**

v.

**Brian SEVERSON and Marion Severson, Appellees (Defendants).**

No. 99–11.

Supreme Court of Wyoming.

Dec. 17, 1999.

Representing Appellee: Bernard Q. Phelan of Phelan–Watson Law Office, Cheyenne, WY.

Representing Appellees: Alexander Z. Davison of Patton & Davison, Cheyenne, WY.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

LEHMAN, Chief Justice.

The only issue to be resolved in this case is whether the district court properly found that the fence between the parties' properties constituted a fence of convenience, rather than a boundary fence. Because we conclude the district court's finding is not clearly erroneous, we affirm.

## ISSUES

We adopt the statement of the issue presented by appellees:

Whether the finding that the fence is a fence of convenience is supported by substantial evidence and therefore not clearly erroneous.

## FACTS

In 1964, the Redding family acquired property in eastern Laramie County. Because only part of the land was suitable for farming, the Reddings, in 1968, built a fence to divide the grazing and farming land and to keep livestock off the farm land. Later, they conveyed the parcel of land located north of the fence, parcel A, to the Murdochs. Appellees, the Seversons, took title by warranty deed on July 18, 1996, from the Murdochs. The Reddings also conveyed a second parcel located south of the fence, parcel B, to appellants, W.A. and Lottie May Lake, on March 22, 1982. The Lakes subsequently conveyed portions of parcel B to Carolyn Venne and James Lake. Sections of parcel B were also conveyed to several other individuals, and one portion is currently owned by appellant Randy England. Both the Lakes and the Murdochs knew the fence, which was north of the property line, did not represent the actual boundary between the two properties. The legal description of the southern property does not include any of the disputed property.

Upon receiving the property, the Lakes and their successors in interest used the land for grazing livestock. To enclose their horses and other livestock, the Lakes built a fence at their southern boundary and, admitting it was easier than building a new one, used the north fence already in existence. They also maintained the fence and mowed grass next to the fence to retard fire danger. As noted above, the Lakes knew the fence was not on the legal boundary. Prior to

purchasing the property from the Murdochs, the Seversons surveyed the land and also learned that the fence was not on the property line. Murdoch told the Seversons they could move the fence and place it on the boundary line.

The dispute before us arose in the fall of 1996 when Brian Severson planned to erect a new fence along the legal boundary line. At the same time, England was placing stakes for a new barn. Severson testified he told England he was building a fence on the property line and did not want a barn on his property. England responded that he would move the barn if it were in the way. In May of 1997, Severson's wife informed Lottie Lake and England that they were constructing a fence. After the Seversons erected a temporary barbed wire fence on the record boundary line placed by the surveyors, England drove by and asked how it looked. Severson replied that "it looks like I own part of your barn." After Severson had completed nearly half of the fence, the Lakes, knowing the fence would run through England's barn, asked the Seversons to stop, and legal proceedings began.

The Lakes and England ultimately brought an action to quiet title claiming the property by adverse possession. They also sought a Writ of Ejectment, as well as a temporary restraining order and permanent injunction. The Seversons counterclaimed to quiet title in themselves. After a bench trial, the district court concluded the Lakes failed to establish a prima facie case of adverse possession and determined the fence in question was one of convenience, making possession of the disputed land permissive rather than hostile, and quieted title in the Seversons. This appeal timely followed.

### STANDARD OF REVIEW

Recently in *Kimball v. Turner*, 993 P.2d 304–306 (Wyo.1999), we stated:

Whether a fence is a boundary fence or merely one of convenience is a question of fact. *Hillard v. Marshall*, 888 P.2d 1255, 1260 (Wyo.1995). This court will not set aside a district court's findings of fact unless the findings are clearly erroneous or

contrary to the great weight of the evidence. *Id.; Sowerwine v. Nielson*, 671 P.2d 295, 301 (Wyo.1983); *Stansbury v. Heiduck*, 961 P.2d 977, 978 (Wyo.1998). When reviewing the record, we keep in mind the following principles:

The judge who presided at the trial heard and saw the witnesses. He is in the best position to determine questions of credibility and weigh and judge the evidence, both expert and non-expert. Thus, on appeal, it is a firmly established and oft-stated rule that we must accept the evidence of the successful party as true, leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference that may fairly and reasonably be drawn from it.

We review a district court's conclusions of law *de novo*. *Stansbury v. Heiduck*, 961 P.2d 977, 978 (Wyo.1998).

### DISCUSSION

We begin our discussion by extensively quoting *Kimball:*

To establish adverse possession, the claiming party must show actual, open, notorious, exclusive and continuous possession of another's property which is hostile and under claim of right or color of title. Possession must be for the statutory period, ten years. Where there is no clear showing to the contrary, a person who has occupied the land for the statutory period, in a manner plainly indicating that he has acted as the owner thereof, is entitled to a presumption of adverse possession; and the burden shifts to the opposing party to explain such possession. However, if a claimant's use of the property is shown to be permissive, he cannot acquire title by adverse possession.

In some circumstances, enclosing land in a fence is sufficient to "raise the flag" of an adverse claimant. However, a fence kept simply for convenience has no effect upon the true boundary between tracts of land. This is so because a fence of convenience

creates a permissive use, and a permissive user

> cannot change his possession into adverse title no matter how long possession may be continued, in the absence of a clear, positive and continuous disclaimer and disavowal of the title of the true owner brought home to the latter's knowledge; there must be either actual notice of the hostile claim or acts or declarations of hostility so manifest and notorious that actual notice will be presumed in order to change a permissive or otherwise non-hostile possession into one that is hostile.

*Kimball v. Turner,* 993 P.2d at 306 (citations omitted).

■ After a bench trial, the district court found the fence initially erected by the Reddings was a fence of convenience and ruled the Lakes had not established their claim for adverse possession. The district court summarized its findings in this fashion:

> The facts which negate such a claim [that when the land changed hands, the nature of the fence changed], and ultimately resolve this controversy, are that at the time the land left the Reddings' hands both the Plaintiffs' and Defendants' successors in interest knew that the fence did not represent the true boundary. Both the Lakes and the Murdochs were aware that the fence was constructed merely for purposes of convenience. The fact that the Murdochs never moved the fence only shows that the fence fulfilled its designated purpose. It was a convenient barrier between the Murdochs' farm land and the Lakes' grazing land. Therefore, use of the land by the Lakes was permissive from the beginning.
>
> In order to change the use from permissive to hostile, the Lakes would have had to give the Murdochs actual notice or do or make such "acts or declarations of hostility so manifest and notorious that actual notice will be presumed." No actual notice was ever given to the Murdochs, nor did the Lakes perform any actions that were so obviously hostile as to put the Murdochs on constructive notice. In fact, the testi-

mony elicited at trial was that neither party ever discussed the issue.

The court concluded that "[o]ne cannot adversely possess that which he has permission to use."

Testimony by the Lakes, Seversons, and other parties supports the conclusion that the fence was merely one of convenience. Lottie Lake testified that although she knew from the Reddings that the property line on the north was not the fence, Lake used the fence and property up to it because it was easier than building a new fence. Murdoch, who knew the fence was not aligned with the property line, testified he did not consider moving the fence because the land immediately south of the fence was not very good for farming. In essence, it provided a convenient barrier. This was also supported by testimony of an adjacent landowner who recalled that the fence in question was originally erected in the 1930s, removed when farming was attempted, and later restored in 1968 when farming proved unsuccessful on that portion of the land. Randy England testified that he knew there was a property line dispute when he began constructing his barn. In addition, when Severson mentioned the fence was not on the property line, Murdoch told him to straighten up the fence. Viewing this evidence as true, as we must, we conclude that it amply supports the district court's finding that the fence was one of convenience.

■ Furthermore, there is nothing in the record to indicate use prior to 1996 was anything other than permissive. Neither the Lakes' pasturing their livestock nor occasionally mowing a fire lane along the fence to reduce fire danger was sufficient to alter the use of the property or to place the Seversons on notice. *See Sowerwine v. Nielson,* 671 P.2d 295, 297 (Wyo.1983) The only hostile use of the land came in 1996 when England began to erect a barn on the disputed property. Assuming this provided Severson with the required actual or constructive notice of England's hostile claim, this action was nevertheless insufficient to establish adverse possession because it failed to satisfy the statutory ten-year period. Wyo. Stat. Ann. § 1-3-103 (Lexis 1999).

*CONCLUSION*

As we concluded in *Kimball,* "[t]here is a critical distinction between a fence which establishes a boundary line, and a fence that merely separates one side of the fence from the other. The former is a monument as well as a fence, while the latter is merely a fence." *Kimball,* 993 P.2d at 309 (quoting *Pilgrim v. Kuipers,* 209 Mont. 177, 679 P.2d 787, 790 (1984)). In this case, the district court's finding that the fence constitutes a fence of convenience is, not clearly erroneous, and we therefore affirm.