2007 WY 110

**William M. ADDISON and Arline N. Addison, husband and wife,
Appellants (Plaintiffs),**

v.

**Tessa DALLAROSA–HANDRICH and Dylan Dallarosa–Handrich, Co–Administrators of the Estate of Eldon M. Handrich; and Brent Prunty, Administrator of the Estate of Margaret R. Handrich, Appellees (Defendants).**

No. 06–274.

Supreme Court of Wyoming.

July 17, 2007.

Representing Appellants: Frank J. Jones, Wheatland, Wyoming.

Representing Appellees: M. Gregory Weisz of Pence and MacMillan LLC, Laramie, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] William M. and Arline N. Addison appeal from an order quieting title to 6.15 acres of land in Eldon M. and Margaret R. Handrich.[1] The Addisons claim they acquired title to the land by adverse possession and the district court's order to the contrary was clearly erroneous. We affirm.

## ISSUE

[¶ 2] The issue for our determination is whether the district court properly quieted title to the disputed property in the Handrichs.

## FACTS

[¶ 3] The property in dispute is located in Albany County, Wyoming. From 1884 until the late 1980s, it was part of the Garton family cattle ranch. In the late 1980s, Greg Garton decided to sell the ranch. He sold it in three parcels. Two of those parcels are now owned by the parties to this case.

[¶ 4] The Addisons purchased their parcel in 1987. At that time, the parcel was enclosed by a single perimeter fence. Mr. Addison considered the fence line to be the boundary line. The Addisons planted and cultivated over 12,000 blue spruce trees on the property, many of them on the disputed 6.15 acres to the south of their property.

[¶ 5] In 1991, the Zeilers purchased the parcel south of the Addison parcel. Ten years later, the Zeilers sold the parcel to the Handrichs. A survey performed showed the true boundary was north of the existing fence. Between 2001 and 2002 the Handrichs removed the fence and replaced it with a new buffalo fence located on the true boundary line.

[¶ 6] The Addisons filed a complaint in the Albany County district court seeking an order ejecting the Handrichs from the disputed acreage, quieting title to the 6.15 acres in them and awarding them damages for trees the Handrichs allegedly destroyed after they took possession of the land. The Handrichs filed an answer and counterclaim in which they denied the Addisons' allegations and sought to have title to the property quieted in them.

[¶ 7] The case went to trial in district court without a jury on June 5 and 6, 2006, and, on June 14, 2006, the district court

---

1. Eldon and Margaret Handrich died in a boating accident after this appeal was filed. By order of this Court dated March 27, 2007, Tessa Dallarosa–Handrich and Dylan Dallarosa–Handrich, co-administrators of the Estate of Eldon Handrich, and Brent Prunty, Administrator of the Estate of Margaret Handrich, were substituted as parties. We refer to them collectively as the Handrichs.

issued a decision letter ruling in favor of the Handrichs. The district court concluded the Addisons had not met their burden of proving their claim of adverse possession because the fence was not a substantial enclosure and was a fence of convenience creating permissive use on the Addisons' part and there was no actual notice converting the Addisons' use from permissive to adverse. The district court entered a final order and judgment consistent with its decision letter.

## STANDARD OF REVIEW

■ [¶ 8] We review a district court's decision following a bench trial according to the following standards:

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Mullinnix LLC v. HKB Royalty Trust,* 2006 WY 14, ¶ 12, 126 P.3d 909, 916 (Wyo.2006) (citations omitted). Further, with regard to the trial court's findings of fact,

> [W]e assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law.

*Id.* The district court's conclusions of law however are subject to our *de novo* standard of review. *Id.*

## DISCUSSION

### 1. *Adverse Possession by the Addisons*

■ [¶ 9] The Addisons claim that they acquired the 6.15 acres to the south of their property by adverse possession and the district court's conclusion to the contrary was clearly erroneous. They assert the evidence was undisputed that they took possession of and occupied the 6.15 acres in 1987 and enjoyed actual, open, notorious, exclusive and continuous possession of the property until fourteen years later when, in 2001 and 2002, the Handrichs unilaterally removed the old fence and erected a new one on the legal boundary line. The Addisons contend that they established their title by adverse possession years before the Handrichs purchased the adjoining property. The Addisons claim the old fence was a substantial enclosure putting the Handrichs and their predecessors on notice of the adverse claim and was not a fence of convenience as the district court erroneously concluded.

[¶ 10] The Handrichs claim the district court properly concluded the fence was one of convenience, meaning the Addisons' use of the 6.15 acres was permissive rather than adverse. They further assert there was no actual or implied notice of a hostile claim by the Addisons until 1999, which falls short of the ten year period required for adverse possession. They contend the Addisons cannot show the district court's determination was clearly erroneous as they must do in order to succeed on appeal.

[¶ 11] Reviewing the factors necessary to establish adverse possession, we have said:

> In order to establish adverse possession, the claiming party must show actual, open, notorious, exclusive and continuous possession of another's property which is hostile and under claim of right or color of title. Possession must be for the statutory period, ten years. When there is no clear showing to the contrary, a person who has occupied the land for the statutory period, in a manner plainly indicating that he has acted as the owner thereof, is entitled to a presumption of adverse possession; and the burden shifts to the opposing party to explain such possession. However, if a

claimant's use of the property is shown to be permissive, then he cannot acquire title by adverse possession.

*Gillett v. White*, 2007 WY 44, ¶ 15, 153 P.3d 911, 915 (Wyo.2007) (citation omitted).

[¶ 12] Addressing the concepts of substantial enclosures and fences of convenience, we have said:

> In some circumstances, enclosing land within a fence is sufficient to "raise the flag" of adverse possession. However, a fence kept simply for convenience has no effect upon the true boundary between tracts of land because, unlike a boundary fence, a fence of convenience gives rise to permissive use and permissive use will not support a claim for adverse possession. Ordinarily, the question of whether a fence is one of convenience or delineates a boundary is one of fact.

*Id.*

[¶ 13] This Court has applied these principles in several cases including *Gillett* in which we affirmed a summary judgment order quieting title to disputed property in the Whites. We held Ms. Gillett's evidence that the fence was one of convenience was not sufficient for summary judgment purposes to rebut the presumption of adverse possession established by the Whites. In *Gillett*, the Whites established the presumption of adverse possession by presenting evidence that the fence separating their property from the Gillett property was in place when the Whites purchased the property seventeen years before the quiet title action. The Whites also showed that when their predecessors in interest purchased the property, they and the prior owner agreed the fence line represented the boundary between the two parcels. The Whites showed that they had cultivated, seeded, harrowed and used the strip of land for grazing since they purchased the land in 1988. It was undisputed the strip of land lay inside the fence line on the Whites' side of the fence as it had since at least 1983.

[¶ 14] To rebut the presumption of adverse possession, Ms. Gillett submitted an affidavit stating her belief that the original owner erected the fence as one of convenience and he and subsequent owners of the neighboring property left it where it was for economic reasons. We held that Ms. Gillett's unsubstantiated beliefs were not sufficient to rebut the presumption of adverse possession or meet her burden of showing that a genuine issue of material fact existed on her claim that the fence was one of convenience.

[¶ 15] In *Davis v. Chadwick*, 2002 WY 157, 55 P.3d 1267 (Wyo.2002), we affirmed the district court's determination after a bench trial that the fence at issue was a substantial enclosure sufficient to put the record owner on notice of the adverse possessor's claim. We said the term "substantial enclosure" means "the land adversely claimed is enclosed in a manner that puts the title owner on notice of the adjoining landowners' adverse claim of ownership and the extent of that claim." *Id.*, ¶ 12, 55 P.3d at 1271. We held the district court's finding was not clearly erroneous given the evidence that the fence ran in a straight line on relatively flat ground that gradually increased in elevation from north to south indicating it followed the true boundary line; the party claiming adverse possession had used the property for grazing since 1957; and all of the parties believed the fence was on the true boundary until a survey was performed in 1997.

[¶ 16] In *Hovendick v. Ruby*, 10 P.3d 1119 (Wyo.2000), we reversed an order granting summary judgment to an adverse possessor, concluding genuine issues of material fact existed for trial on the question of whether the fence was one of convenience. Evidence was presented that the legal boundary between the properties was in the middle of the river and the disputed fence was south of the boundary. The prior owner of the southern property indicated the fence was placed south of the boundary to keep cattle out of the river. As water was diverted from the river, land emerged and the owner of the northern property used the disputed parcel as pasture. The owner to the south knew this but did not mind because he considered the swampy land to be of little value. Citing the rule that the question of whether a fence is a boundary fence or one of convenience is generally a factual one, we remanded the case for trial.

[¶ 17] In *Lake v. Severson,* 993 P.2d 309 (Wyo.1999), we affirmed a district court order following a bench trial finding that a fence was one of convenience. We concluded the following evidence supported the district court's finding: both land owners knew the fence was not located on the true boundary; the owner did not move the fence because the land between it and the true boundary was not suitable for farming; and the adverse possessor used the land up to the fence for grazing because it was cheaper than building a new fence along the true boundary. Based upon this evidence, the district court found, and we agreed, that the use was permissive. *Id.* at 312.

[¶ 18] In *Kimball v. Turner,* 993 P.2d 303 (Wyo.1999), we affirmed the district court's determination after a bench trial that the fence at issue was one of convenience. There, the disputed 7.3 acres of land was enclosed inside a fence with land owned by Rawsel Turner. *Id.* at 304. Rawsel built the fence soon after he received a patent for the land in 1915. In 1929, his son, Deloss, received a patent for the land south of his father's property. Sixty-three years later, in 1992, a surveyor discovered the fence that Rawsel built was not on the legal boundary separating the properties. *Id.* at 305. Deloss Turner's successors in interest began building a fence on the legal boundary, such that the 7.3 acres would be enclosed with their property. Rawsel's successors instituted an action claiming ownership of the 7.3 acres by adverse possession or, alternatively, the doctrine of recognition and acquiescence.

[¶ 19] The district court concluded from the manner in which the fence was constructed and the way it and the disputed property had been treated that the fence was not intended to serve as a boundary fence. *Id.* at 307. Important to the district court's determination were: the fact that the fence appeared to have been made by someone walking along stringing barbed wire from tree to tree and placing fence posts when trees or bushes were not available; the irregular course of the fence; and the lack of any indication that the fence was intended to mark or follow a section line. *Id.* at 306. Additionally, the district court considered testimony of family members that they had been told the fence was not on the property line and was used to separate Rawsel's and Deloss's cattle. Based upon these factors, we held the district court's finding that the fence was one of convenience was not clearly erroneous. *Id.* at 307.

[¶ 20] In the present case, the Handrichs presented evidence showing that the fence was in poor shape and in places consisted only of posts and no wire, leaving the disputed parcel accessible to cattle from the property to the south. Thus, unlike in Davis, the disputed parcel was not enclosed in a manner putting the Handrichs on notice of the adverse claim. The Handrichs further presented evidence that the fence did not follow a straight section line but followed the topography of the area, zig-zagging around the bottom of a rough, rocky hill, rather than going in a straight line over the hill. Again, this evidence contrasts with *Davis* where the fence ran in a straight line on relatively flat ground, indicating it followed the true boundary line.

[¶ 21] Evidence was also presented in the present case showing that originally the fence separated two pastures, both owned by Garton Ranches. The pasture to the south was used for calving and when the calves reached a certain age they were moved to the north pasture. This evidence clearly showed that for the first one hundred years of its existence the fence was not intended to delineate a boundary line between properties. Although Mr. Garton testified that he assumed the fence was on the boundary line between Section 23 to the north and Section 26 to the south and did not know until two days before trial that his assumption was incorrect, the evidence showing the gaps in and irregular course of the fence and the lack of any indication that the fence was intended to mark or follow a section line was, as in *Kimball,* sufficient to support the district court's conclusion that the fence was one of convenience.

## 2. *Recognition and Acquiescence*

[¶ 22] In its decision letter, the district court also addressed the Addisons' claim that the fence was converted to a boundary

fence under the doctrine of recognition and acquiescence when the Gartons sold them the land in 1987. The doctrine has been said to apply where the true boundary line is uncertain or disputed and the respective property owners recognize and acquiesce in a different boundary line and occupy the land on either side of that line as though it was their land for at least ten years under facts and circumstances equivalent to an express agreement. *Kimball,* 993 P.2d at 308. The district court found the doctrine inapplicable to the Addisons' claim, concluding the true boundary between Sections 23 and 26 was not disputed or necessarily uncertain, and the assumption the fence followed that boundary was incorrect. Additionally, the district court concluded even if the Gartons could be said to have acquiesced in or agreed to the old fence as marking the boundary, their successors, the Zeilers, did not.

[¶ 23] We hold that the district court's conclusions were not clearly erroneous.

Moreover, in *Kimball,* we said: "[The district court's] finding [that the fence was one of convenience] precludes both the adverse possession claim as well as the claim that the boundary had been altered by recognition and acquiescence." *Id.* at 309. This same reasoning applies here. Our holding that the district court's finding that the fence was one of convenience was not clearly erroneous precludes the Addisons' claim of recognition and acquiescence.

[¶ 24] We affirm the district court's order quieting title to the disputed parcel in the Handrichs.