FILED

07/11/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0699

DA 16-0699

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 170

HANS E. SCARISON and LEANA F. SACRISON,

      Plaintiffs and Appellants,

    v.

JEFFREY M. EVJENE, RICKY GENE MARVEL,
and SYLVIA DENESE MEE,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DV-14-209
Honorable James B. Wheelis, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Randall A. Snyder, Snyder Law Office, PC, Bigfork, Montana

      For Appellees:

          Sean S. Frampton, Morrison & Frampton, PLLP, Whitefish, Montana

          Kim Christopherson, Christopherson Law Office, Kalispell, Montana

Submitted on Briefs:  May 17, 2017

Decided:  July 11, 2017

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Plaintiffs Hans E. Sacrison and Leana F. Sacrison (Sacrisons) appeal the partial summary judgment entered by the Nineteenth Judicial District Court, Lincoln County, in favor of Defendant Jeffery M. Evjene (Evjene).[1] The appeal comes before us upon certification pursuant to M. R. Civ. P. 54(b). We address the following issue:

> *Did the District Court err by granting partial summary judgment on a record containing genuine conflicts in material facts?*

¶2 We reverse and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 This case involves a boundary dispute involving three adjacent properties. Sacrisons initiated this action for declaratory judgment and quiet title against Evjene, as well as Ricky G. Marvel (Marvel) and Sylvia D. Mee (Mee), collectively "Marvel/Mee." After the parties moved for summary judgment, the District Court granted partial summary judgment in favor of Evjene on Sacrisons' claims, directed that a decree of quiet title be entered, and certified the order as final under M. R. Civ. P. 54(b). We accepted the certified order for review on November 29, 2016. Sacrisons' claims against Marvel/Mee remain before the District Court.

¶4 Based on the record developed to this point, all the properties involved in the dispute were owned by Will W. Cole until 1954. That year, Cole sold approximately one acre to Evjene's original predecessors-in-interest, his grandparents. A survey to create this parcel

---

[1] Cheryl Evjene was named as a party in the original complaint, but was dismissed when it was discovered that she had quitclaimed her interest in the property to Jeffery Evjene.

2

was performed by Leland E. Tripp, herein "the Tripp Survey," and recorded with the Lincoln County Clerk and Recorder as Plat 294. The parties agree that the Tripp Survey contains errors. The District Court indicated that the property description provided by the Tripp Survey "does not close. The final measurement is 32 feet off from the point of beginning," and stated, "[t]he problem lies in the fact that when applied to the ground, Tripp's survey is ambiguous."

¶5 The Tripp Survey relied on two monuments, the Tobacco River and Tobacco Siding Road, to set the western, southern, and eastern boundaries of the property. The boundaries form the property into, roughly, the shape of a trapezoid. In about 1950, before the property was sold and the Tripp Survey was completed to create a parcel, a fence was constructed along what may have been the anticipated northern boundary of the property. Evjene's grandparents built a house on the property around 1952. Later, when surveying the property, Tripp did not rely on the fence as a monument for the northern boundary. In 1988, Sacrisons acquired their property, which lies to the north and west of the Evjene property, and to the west of the Marvel/Mee property, which also lies to the north of the Evjene property. In 2005, Evjene purchased his property from his uncle and aunt, who had acquired the property from his grandparents. He built a new fence in the location of the original 1950 fence. Evjene also built a new home upon his grandparents' original 1952 home site.

¶6 In 2012, Evjene retained Sam Cordi Land Surveying and Mapping, Inc., to retrace the Tripp Survey of his property, herein "the Cordi Survey," which was recorded as

Certificate of Survey (COS) 4181. The Cordi Survey relied upon monuments cited in the Tripp Survey, as well as the fence in the northern portion of the property, but ran into difficulties, noting:

> The Evjene family have [sic] occupied the property to the County Road, to the Tobacco River, and to a fence along the northern boundary. This fence line has been agreed upon as the boundary line between the Evjenes and the property owners to the north since [the Evjene property] was created. After numerous attempts to the make the legal description agree with the lines of possession, this firm believes that the description and original survey contain errors that cannot be made to match the agreed upon boundaries.

The Cordi Survey determined the western boundary of the original Tripp Survey ran through Evjene's home, and that the correct boundary of Evjene's property partially encroached into Sacrisons' property.

¶7      Sacrisons object to the notation in the Cordi Survey that the property owners agreed the fence marked the northern boundary of the Evjene property. In 2013, Evjene entered a boundary line agreement with Marvel/Mee and other neighbors. This agreement stipulated the common, north-south boundary line, as between the parties to the agreement, was the fence line described in the Cordi Survey. Sacrisons did not join the agreement and expressed disagreement with the proposition that the fence line constituted the correct boundary. Sacrisons commissioned Brian Block to retrace the boundaries of their property, herein "the Block Survey," which was recorded as COS 4229. The Block Survey determined the boundary of the Sacrisons' property partially overlapped Evjene's property and placed a boundary line through Evjene's house. The Block Survey did not rely on the

fence as an artificial monument for the north-south boundary between the properties, and noted as follows:

> Certificate of Survey 4181 [the Cordi Survey] . . . retraces occupation and lines of possession. It was stated in the Surveyor's Note, "that the fence line has been agreed upon as the boundary between Evjenes and the property owners to the north." However, the "property owner to the north" is also Sacrison and they did not sign or join in C.S. 4181.

¶8 Sacrisons brought this action to determine their common boundary with Evjene, and for other relief not before us here. In support of his request for summary judgment, Evjene submitted an affidavit providing information based on "discussions with my grandparents and other family members" that a fence "was installed along the northern boundary in or around 1950." The District Court concluded that the fence should be declared an artificial monument denoting the northern boundary of the Evjene property because "it is undisputed that the fence along the northern boundary is in the same location as the original fence in 1954." Although indicating the conflicting notes on the surveys, emphasized by Sacrisons, were "of value to this court," the District Court nonetheless held that the material undisputed fact was that "the fence line itself has remain[ed] unchanged since 1954." After declaring the fence to be a survey monument, the District Court rejected the Block Survey as a matter of law because it "disregarded the basic rule, to give greater weight to the monuments, such as the fence, than to mere measurements."

¶9 Sacrisons appeal.

5

**STANDARD OF REVIEW**

¶10 We review de novo a district court's grant or denial of summary judgment, applying the same criteria of M. R. Civ. P. 56 as a district court. *Whary v. Plum Creek Timberlands, L.P.*, 2014 MT 71, ¶ 8, 374 Mont. 266, 320 P.3d 973 (citation omitted). Summary judgment is an extreme remedy, which should only be "rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3).

**DISCUSSION**

¶11 *Did the District Court err by granting partial summary judgment on a record containing genuine conflicts in material facts?*

¶12 In its decision, the District Court cited precedent concerning surveying and monuments and concluded that "[s]ummary judgment is proper in this case because the boundaries of Evjene's property are based on calls to natural and artificial monuments, whereas the courses and distance in Tripp's survey, and Block's COS 4229, are undisputedly inaccurate and ambiguous." However, in so concluding, the District Court relied upon material facts that are genuinely disputed by Sacrisons. Determining whether Evjene was entitled to judgment as a matter of law and whether there are material factual conflicts requires a review of the law related to the surveying of property.

*Surveying Law—Monuments and Call Priority*

¶13 A monument is "[a]ny natural or artificial object that is fixed permanently in land referred to in a legal description of the land." *Black's Law Dictionary* 1161 (Bryan A.

Garner ed., 10 ed. 2014). "Natural monuments include such natural objects as mountains, streams, rivers, creeks, springs, and trees. Artificial objects and monuments consist of marked lines, stakes, roads, fences, buildings, and similar matters marked or placed on the ground by the hand of man." 12 Am. Jur. 2d *Boundaries* § 6 (2009). Monuments are commonly used to establish property boundaries, but the priority of calls is governed by statute and case precedent. We have explained:

> If there were any principle that perhaps is misinterpreted and possibly misapplied by surveyors, attorneys, and courts, it is the priority of calls. The priority of calls was developed through caselaw in the 1800s and is also governed by statutory law. The general hierarchy is as follows: lines actually run on the ground by the creating surveyor prevail over natural monuments (e.g., a tree), which prevail over artificial monuments (e.g., surveyor's stakes), which prevail over references to adjoining boundaries (e.g., "to Hunter's property line"), which prevail over directions (e.g., northwest), which prevail over distances (e.g., 30 feet), which prevail over area (e.g., 5 acres), which prevails over place names (e.g., "the Quinn farm").

*Larsen v. Richardson*, 2011 MT 195, ¶ 44, 361 Mont. 344, 260 P.3d 103 (internal quotation and citations omitted); *see also* Walter C. Robillard, *Clark on Surveying and Boundaries* § 14.21, 14-54 (Supp. 2014). This priority ranking of calls is not inflexible, and a "lower-ranked call may prevail over a higher-ranked call if the circumstances show that the lower-ranked call is the more reliable evidence of the boundary's true location." *Larsen*, ¶ 45 (citation omitted). When a surveyor conducts a retracement survey, his "primary purpose is to track the footsteps of the original surveyor, to locate the survey as it was intended to be located on the ground" by the original surveyor, which aims to establish a property's boundary by way of the highest call. *Larsen*, ¶ 32; *Karlson v. Rosich*, 2006 MT 290, ¶ 14, 334 Mont. 370, 147 P.3d 196. If the surveyor "is unable to follow the

7

precise 'footsteps' of his or her predecessor, then a surveyor must attempt to track the original surveyor's work using whatever recoverable evidence that exists." *Larsen*, ¶ 36; Robillard, *supra*, § 15.08, 15-15. Finally, "[i]n ascertaining the true and correct boundaries of a parcel, the surveyor is obligated to consider any and all evidence. This rule is inflexible." Robillard, *supra*, § 14.21, 14-54.

¶14 Based on the summary judgment record before the District Court, it appears that the Cordi Survey and the Block Survey were based upon research about property ownership records, including surveys of record, and field work. Both surveys relied, in part, on monuments, with the central conflict between them being whether to rely on the fence as an artificial monument denoting a property boundary. Based on its assumption that all parties agreed the fence marked the boundary, the Cordi Survey deemed it to be a monument. In contrast, Block noted disagreement among the parties about the fence and testified in his deposition that, while a court could consider the fence, along with other testimony, in making that determination, he would not, as a surveyor, declare it to be a monument.

¶15 "In order to rely on a fence as the true and correct dividing line, the fence itself must be supported by testimony or parol evidence indicating the fence was built on the correct original line." Robillard, *supra*, § 15.10, 15-42. As we explained in *Pilgrim v. Kuipers*, 209 Mont. 177, 181-82, 679 P.2d 787, 790 (1984), a case also involving a legal description that did not call to a disputed fence line as a boundary monument:

> There is a critical distinction between a fence which establishes a boundary line, and a fence that merely separates one side of the fence from the other.

The former is a monument as well as a fence, while the latter is merely a fence. Unlike the highway right-of-way and the Beaverhead River, *there are no calls in the legal description to the "fox farm" fence. There is no evidence that the fence line was surveyed or that the fence was built to conform to a surveyed line.* One witness testified that the fence was built zig-zag apparently around trees and without any pattern at all. Another said it "jogged" by as much as 20 feet. In contrast, the legal description calls for a straight line. There simply is no evidence to support the fence as a monument.

Nor does a fence establish a boundary line when it does not conform to the true line, even though the property owners thought it was the boundary.

Where two adjoining properties are divided by a fence, which both owners suppose to be on the line, such fence is a division fence, as between them, until the true line is ascertained, when they must conform to the true line.

(Internal quotation omitted; citations omitted; emphasis added.) There are parallels to *Pilgrim* here.

¶16 Record evidence indicates the original fence was built around 1950, before the property was sold and surveyed. Then, when the original Tripp Survey was completed in 1954, it did not call to the fence as a monument for the boundary, despite the survey's calls to other monuments for the property description. Evjene averred, and the District Court assumed, that his 2005 fence was built "in the exact same location" as the original fence, but, as in *Pilgrim*, there is "no evidence that the [original] fence line *was surveyed* or that the fence was built to *conform to a surveyed line*." *Pilgrim*, 209 Mont. at 182, 679 P.2d at 790 (emphasis added). The only possible exception is a hearsay statement, discussed below. The District Court's stated basis for declaring the existing fence a monument, that "it is undisputed that the fence along the northern boundary is in the same location as the original fence in 1954," even if correct, assumes without proof that the original fence marked the property's boundary. The District Court failed to acknowledge our explanation

9

in *Pilgrim* that a fence, by itself, does not establish a boundary; more is needed. The original fence was not called in the legal description, and has not yet been otherwise verified as conforming to the northern boundary of the Evjene property. In view of these factual issues, illustrated further by the conflicting Cordi and Block retracement surveys, we must conclude that resolution of the dispute by summary judgment was in error as overlooking genuine issues of material fact, which must be resolved by the trier of fact.

***Evidentiary Standard***

¶17    In his affidavit, Evjene averred his property was originally purchased by his grandparents, transferred to his aunt and uncle in the early 1980s, and then purchased by him in 2005. He asserted his affidavit provided information passed to him from family members, and avers that, "[p]rior to the conveyance of the Property to my grandparents in or around 1954, a fence was installed along the northern boundary in or around 1950." Of course, there was no boundary in 1950—at least, one that had been surveyed. *Pilgrim* explained the necessity of demonstrating that a "fence line *was surveyed* or that the fence was built to *conform to a surveyed line*," before it could be considered a monument. *Pilgrim*, 209 Mont. at 182, 679 P.2d at 790 (emphasis added). Further, even assuming, *arguendo*, that the affidavit satisfied the *Pilgrim* standard, Evjene's statement constitutes hearsay. An "affidavit must be made on *personal knowledge*, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." M. R. Civ. P. (56)(e) (emphasis added). Evjene's affidavit was not based entirely on his own personal knowledge. Evjene argues any hearsay in his affidavit is admissible

10

under M. R. Evid. 803(20), which provides that, "[r]eputation in a community, arising before the controversy, as to boundaries of or customs affecting lands in the community, and reputation as to events of general history important to the community or state or nation in which located" are exceptions to the prohibition against hearsay. About this rule we have explained:

> The reason for this rule is not only caused by the perishable nature of boundary markers, but also because *general reputation about facts of community interest are generally trustworthy. It is unlikely that a falsehood could become generally accepted in a community as the truth*. The prolonged and constant exposure of these facts to observation and discussion by the *community* sifts out the possible errors and gives to the residual facts which are generally accepted by the locality a trustworthiness which allows these facts to be presented as evidence in a court of law.

*Goodover v. Lindey's*, 232 Mont. 302, 308, 757 P.2d 1290, 1294 (1988) (internal quotation omitted; citation omitted; emphasis added); *see also* 5 Mark S. Brodin et al., *Weinstein's Federal Evidence* § 803.22[1], 803-142 (2d ed. 2012). As we explained, evidence falling into this hearsay exception must be based on the consensus of the community. Here, the evidence supporting the location of the fence as the property line has been supplied only by Evjene, Marvel, and Mee—party litigants who previously entered a boundary agreement. We are hesitant to declare that this testimony qualifies as "general acceptance in a community" necessary to satisfy M. R. Evid. 803(20), for purposes of summary judgment. *Goodover*, 232 Mont. at 308, 757 P.2d at 1294.

¶18 Summary judgment "should [only] be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P.

(56)(c)(3). We conclude that genuine issues of material fact precluded summary judgment herein, and Evjene was not entitled to judgment as a matter of law.

¶19 We reverse and remand for further proceedings consistent with this opinion.


/S/ JIM RICE


We concur:

/S/ DIRK M. SANDEFUR
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER